No. 415. ENGLISH ET AL. *v.* CUNNINGHAM ET AL. The order of the Court of November 16, 1959, *ante,* p. 897, is amended to read as follows: "The motion to correct or amend the caption to designate or confirm the Board of Monitors as a party respondent is denied. Leave to file brief of the Board of Monitors in opposition to the petition for certiorari is granted. The application for a stay of the judgment and the motion of Anthony J. Distinti, Individually and as President of Local 277, I. B. T., et al., for leave to file brief, as *amici curiae,* are denied. The petition for writ of certiorari to the United States Court of Appeals for the District of Columbia Circuit is also denied. MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS are of the opinion certiorari should be granted. MR. JUSTICE FRANKFURTER has filed the following memorandum:

" 'For me, the reasons that govern the normal practice of the Court in not recording votes on dispositions of petitions for certiorari are controlling against departures from that practice. On appropriate occasions, however, I deem

it desirable to indicate the issues presented by such a petition and the legal significance of its denial. Here, this will become manifest from the following memorandum in which on August 4, 1959, as a Circuit Justice, I denied the application for a stay of the judgment, review of which is sought in this petition for certiorari:

" ' "This is an application for a stay of the decree entered on July 9, 1959, by the United States Court of Appeals for the District of Columbia Circuit against the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, hereafter called the Teamsters, and certain of their officers, who, together with the Teamsters, will be called defendants. The litigation was initiated by thirteen members of locals of the Teamsters (one of whom has dissociated himself from the rest), to be called plaintiffs. This application is in effect a review of the refusal of the Court of Appeals to grant such a stay.

" ' "The basis of the application is to enable defendants to file a petition for certiorari to review the decree of the Court of Appeals, the validity of which they propose to challenge and the enforcement of which, pending potential review and potential reversal here, will, they claim, cause them irreparable damage. Since the contemplated petition for certiorari cannot be considered prior to the reconvening of this Court on October 5, 1959, the threshold question on this application is whether the issues which defendants plan to bring before the Court are not of such a legal nature that they may fairly be deemed so lacking in substantiality as to preclude a reasonable likelihood of satisfying the considerations governing review on certiorari, as guided by Rule 19 and the practice of the Court. Informed by the illuminating opinion of Judge Fahy and having had the advantage to hear elucidation of the issues by counsel for the parties and by the Chairman of the Board of Monitors appointed

by the United States District Court for the District of Columbia, as provided by a consent decree entered January 31, 1958 (the scope of which underlies the immediate litigation), I cannot say, on a balance of probabilities, that these issues may not commend themselves to at least four members of this Court as warranting review here of the decree below. I am confirmed in this view by the candid acknowledgment of the Chairman of the Board of Monitors and counsel for plaintiffs that serious legal questions are at stake.

" ' "Accordingly, the matter before me is reduced to the very narrow question whether I should overrule the discretion exercised by the Court of Appeals in refusing a stay of its mandate until October 12, which is the earliest day when this Court, in the normal course of affairs, will determine whether to grant the prospective petition for certiorari (assuming that it will have duly come before the Court) and also determine, in case the petition be granted, that the decree to be reviewed is not to be enforced pending final adjudication.

" ' "As already indicated, at the core of this litigation is the scope of a consent decree entered in the District Court on January 31, 1958, and the power of the District Court, in enforcing that decree, to order the defendants to carry out the specific directions defined by the Court of Appeals in its decree of July 9, 1959, in accordance with the procedure defined in that decree and in the opinion which gave rise to it, rendered on June 10, 1959. By the consent decree, the defendants, as officers of the Teamsters, undoubtedly assumed certain obligations judicially enforcible. Whatever may or may not have been the freedom of action of these officers prior to this consent decree, by it their freedom of action was circumscribed to the extent that the consent decree imposed upon them enforcible obligations. The legal issue growing out of this voluntary restriction of defendants' action is the validity

908

of specific recommendations by the Board of Monitors as judicially defined and approved.  Such orders, as they have been defined by the Court of Appeals, are concededly unconsented and are challenged as unwarranted, unilateral modifications of the consent decree.

" ' "I have said that these specific commands, about half a dozen in number, restrict what is asserted to be the freedom of the power of officers of the Teamsters, claimed to be theirs under the constitution of the union.   According to the Court of Appeals, these judicial commands upon the defendants are merely enforcement of the obligations which they undertook by the consent decree and are not one-sided modifications of it.  This is the controversy to be raised by the petition for certiorari which the defendants plan to file.  But, in any event, they claim that by denying a stay until the matter can duly come before this Court, the Court of Appeals has commanded them to take action of an irreparable nature claimed to be outside the scope of the consent decree and in derogation of the powers of the officers under the constitution of the Teamsters, before this Court has had an opportunity to pass on the petition for certiorari, with the derivative problem whether to keep matters in status quo until such a petition, if granted, could be disposed of on its merits.

" ' "If it were clear that between now and October 12, which is the earliest day for the disposition of the proposed petition for certiorari, what the Court of Appeals has directed to be done would be capable of being carried out so as to change, irrevocably and adversely, the rights and powers claimed by defendants, before this Court had an opportunity to determine the validity of what the defendants have been ordered to do, I would feel constrained to grant the stay.  It may well be that the Court of Appeals, after due consideration, on July 15, 1959, denied this stay on its forecast that its decree could

not, in view of all the circumstances, be effectuated before this Court could pass on a petition for certiorari, with the ancillary question of a stay in case such petition were granted. In any event, my appreciation of the intrinsic elements in carrying out the various items of the decree still left in controversy (several of them have become either moot or taken out of contest by agreement) leads me to conclude that, in the setting of the immediate circumstances, they are not of a nature to cause irreparable harm between now and October 12. I am reinforced in this conclusion by the responsible assurances of the Chairman of the Board of Monitors regarding the course of events which will control such matters. The details of the half-dozen items in controversy are so specialized and technical that nothing would be gained by particularizing them.

" ' "One thing more does need to be said.

" ' "As is recognized by all concerned, judicial supervision of a union with a membership of 1,500,000 and some 800 locals through the agency of a mechanism like the Board of Monitors is an unusual manifestation of equity powers. Defendants seek to enlarge the significance of the immediate items in controversy by their anticipation of an expansion of the powers of the Board of Monitors and their resulting fear of disruption of forces within the Teamsters as well as a heavy drain on the Teamsters' treasury in the course of such far-flung judicial administration. These are matters not immediately involved in the decree of the Court of Appeals now before me. But I deem it appropriate to say that the Court of Appeals, in its decision of June 10, 1959, as well as on preliminary proceedings and in the procedure which it followed in formulating its decree of July 9, 1959, has manifested an alert understanding of the gravity of the litigation, and has made manifest its sense of the high importance of assuring the most protective procedure on the part of the Board of

Monitors in making recommendations and of the District Court in issuing orders on the basis of such recommendations; it has been mindful of the importance of working out problems between the Monitors and the Teamsters on the basis of ample consultation, with full regard for the interests of the membership of the union of which, after all, the union is the collective expression. As to the fear of excessive drain on the Teamsters' treasury, one may safely rely on the Court of Appeals in affording a shining example in the spending of other people's money. A court should be the most sensitive of fiduciaries. In sanctioning fees and other expenditures it will be guided by frugality and not generosity." ' "