**BAKERY AND CONFECTIONERY WORKERS INTERNATIONAL UNION OF AMERICA, Appellant,**

v.

**Mozart G. RATNER, Appellee.**

**No. 17655.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 15, 1963.

Decided June 11, 1964.

---

Mr. Abraham J. Harris, Washington, D. C., for appellant.

Mr. Sheldon E. Bernstein, Washington, D. C., with whom Mr. Mozart G. Ratner, Washington, D. C., was on the brief for appellee. Mr. Paul H. Mannes, Wash-

ington, D. C., also entered an appearance for appellee.

Before EDGERTON, Senior Circuit Judge, and FAHY and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

Bakery and Confectionery Workers International Union of America has appealed from an "Order and Judgment" of the District Court in favor of the appellee to recover $54,884.91 as counsel fees. The appellee as attorney for five local Union officers had instituted an action,[1] C.A. 686–60, entitled Moschetta, et al. v. Cross, et al., against the International's President, one James G. Cross; its Secretary-Treasurer, one Peter H. Olson; and five Vice Presidents of the International. All such officers at the time were members of the International's General Executive Board and occupied positions of trust in relation to the affairs of the International and its membership. Before the District Court was a "second amended and supplemental complaint" which had charged that Bakery and Confectionery Workers' funds had been unlawfully misappropriated by Cross and that other acts of financial corruption had occurred, with breaches of fiduciary duty and misconduct on the part of the foregoing named officers. The five plaintiffs claimed status to sue individually and also as representatives of some 70,000 Bakery and Confectionery Workers members whose welfare and interest had been damaged. After much litigation in behalf of the class and the performance of other services for the benefit of the International and its members, the appellee moved to withdraw as counsel. He also asked for the appointment of "independent" counsel to continue the class action and that he be compensated for all services and disbursements. The award entered November 6, 1962, ran against the International, its members, the class plaintiffs and others. The International alone has sought review.

The appellant argues first that the International and its members may not law-

---

1. Pursuant to § 501 of the Labor-Management Reporting and Disclosure Act, 1959 (LMRDA), 73 STAT. 535 (1959), 29 U.S. C. § 501.

fully be held to payment of the judgment since 29 U.S.C. § 501(b) authorizes the trial judge merely to allot "a reasonable part of the recovery * * * to pay the fees of counsel * * * and to compensate" for expenses incurred in litigation brought pursuant to that subsection. It is argued that there was no money "recovery" in behalf of the International from which to "allot" fees and reimbursements. It is additionally contended that there can be no valid award running against the International without notice to its membership with respect to the fees since the International, unlike the class plaintiffs, had not been a party to any agreement with counsel, and that the award otherwise lacks support in the record.

The various phases of litigation presented in the District Court, and other actions pursued by the appellee in behalf of the class and the International's members reflect a complex background. That there had been misappropriation of Union funds is beyond question.[2] The incumbent officers of the International had refused to seek an accounting and other available relief. A voluntary association of Bakery and Confectionery Workers local union officers was formed, known as the Local Union Reunification Committee, or LURC. This group was headed by the presidents of five local unions who authorized the institution of the class action, Moschetta v. Cross, to be brought pursuant to a retainer agreement between the LURC plaintiffs and counsel, with provision for litigation disbursements and costs and for compensation to the attorneys.[3]

The *Moschetta* complaint in the District Court had not only expressly sought to recover the counsel fees, costs and expenses incurred in prosecuting the action, but asked for substantial equitable relief including an accounting; restitution of misappropriated funds; an injunction against further misappropriation and diversion of funds of the International; an order against Cross and others to restrain them from penalizing and coercing the *Moschetta* plaintiffs and other persons cooperating with LURC for the purpose of preventing them from prosecuting the action and from obtaining information relevant thereto; continuous court supervision of the financial practices of the International and its officers; and a prayer that the court order a membership referendum in accordance with the constitution of the International preliminary to the calling of a national convention. The District Court found pursuant to 29 U.S.C. § 501 (b) that "good cause" had been shown for the commencement of the *Moschetta* proceeding.[4]

Confronted by the demands of the class plaintiffs, the record shows, Cross and others expressed willingness in 1960 to settle the pending controversy and reorganize the International. A proposed settlement agreement was filed in the District Court with a motion to dismiss the *Moschetta* suit, and an appropriate announcement was published in the International's news letter. However further alleged derelictions on the part of Cross and Olson having come to light, their suspension followed in March 1961.[5]

2. For example, Cross was convicted of various offenses including criminal conspiracy and embezzlement by agent and was sentenced to imprisonment. No appeal was taken.

3. Legal services were to be paid thus: Mozart G. Ratner, $35 per hour; Sidney Dickstein & David I. Shapiro, $25 per hour; junior associate counsel, $15 per hour. Pursuant to that agreement and for the period up to April 18, 1961, counsel were paid substantial legal fees and expenses which are not here involved.

4. In due course, District Judge Tamm was designated as a "special judge" to take charge of all aspects of the litigation, including motions, pretrial proceedings and trial. Cf. Handbook of Recommended Procedures for the Trial of Protracted Cases, 25 F.R.D. 351; and the sample order at 378.

5. Up to this point, the appellee and his associate counsel had received payment for their services under their retainer agreement with LURC. See note 3 *supra.*

We deem it unnecessary to particularize as to all details of the machination and obstructive tactics thereafter pursued by Cross and the *Moschetta* defendants. We note first that Cross and others maneuvered for control of the International's General Executive Board. They succeeded in the installation of International Vice President Landriscina, one of the original defendants, as acting president of the International. Then in April 1961, LURC caused the appellee to reenter the case. The motion to dismiss the complaint was withdrawn and steps were taken pursuant to which the District Court fixed January, 1962 as the date for a court-supervised convention, with provision in the court's order for the protection of LURC.[6]

We refer briefly to an earlier but not unrelated aspect of the problem considered by Judge Tamm. While Cross still dominated the International, various officers who had supported LURC were dismissed. Agreeably to the provisions of 29 U.S.C. § 412 as applicable under 29 U.S.C. § 529 (1961) which makes unlawful acts of reprisal against union members who exercise their rights under the Landrum-Griffin Act, one Alvino and three other high-ranking officers of the International brought suit, C.A. 2400–60, Alvino, et al. v. Bakery and Confectionery Workers International Union. The District Court granted a preliminary injunction directing their reinstatement with back pay. Such success in that action and yet other steps in the campaign conducted by and under the direction of the appellee resulted in the election of a pro-LURC slate of officers at the International's January, 1962 convention.

The International's membership, protected by the District Court's order, took control of the January, 1962 convention. One Kralstein, reinstated as a result of that order in the *Alvino* action, became president of the International. The Bakery and Confectionery Journal in February, 1962 noted the part played by LURC in bringing about the convention, particularly recognizing that LURC had been successful in the fight to remove from office the "entrenched International union officials."[7] At the convention, it was decided that the LURC association should be dissolved and that the International should thereupon become plaintiff in what had been the class action. Present counsel for the appellant was to represent the International. The appellee was informed that the International would not accept responsibility for LURC counsel fees "unless and until ordered by a court to do so." It is uncontroverted that from April, 1961 through January 25, 1962, the appellee Ratner had received no payment for his services or those of his associates.

Such in brief summary are some of the circumstances under which the appellee sought to withdraw from the *Moschetta* case, an award of counsel fees for services rendered, and reimbursement of expenses incurred in connection therewith. Relying upon his familiarity with the entire record in all the litigation and its accompanying aspects, with the memoranda of the respective parties before him, and on the uncontroverted affidavit of the appellee, Judge Tamm ruled orally: that appellee's motion to withdraw from the case was to be granted; his motion to appoint "independent" counsel was to be denied but as he noted, only upon the representation by the appellant's counsel "that the Union intends to employ independent counsel to pursue the accounting action"; and finally as follows:

"With reference to Mr. Ratner's motion for a fee in the amount of

---

6. Three separate appeals, Nos. 16474, 16478 and 16480, were brought to this court involving protective orders of the District Court. These appeals were here consolidated, only to be dismissed after the International's convention was held in January, 1962. The appellee appeared as attorney for the Moschetta plaintiffs in these cases.

7. The appellant on brief tells us: "The Moschetta case succeeded in forcing the convention some months earlier in 1962 than it otherwise would have been held, since anti-LURC forces planned a convention for the fall of 1962. This was the one tangible achievement of the litigation."

$54,884.91, the Court will grant the motion. The Court will grant the motion first as to the contracting parties who entered into the fee agreement. The Court will grant the motion second as to the class represented by these named plaintiffs. And third the Court will grant the motion in so far as it assesses the fees against the funds of the Union. The Court believes that this action was initiated, was undertaken, and was prosecuted in the interest of the Union membership as a whole. The Court believes that such fruits as flowed from the lengthy proceedings flowed to the benefit of the Union and for the benefit of all of its members. The Court, accordingly, grants the motion in that regard."

Thereafter Judge Tamm filed the challenged "Order and Judgment" with its award of $54,884.91 "on account of work performed and disbursements incurred" by the appellee and his associates. Recited further in that Order and Judgment are the following findings:

"(3) That prior to the filing of the motion for the allowance of fees and disbursements, no protest was ever made as to the quality or nature of the services performed by Mr. Ratner or his associates nor as to the legitimacy of the billing rendered;

\* \* \* \* \* \*

"(5) That this suit was initiated and prosecuted in the interest of the Union membership as a whole and such fruits as flowed from the proceedings herein were for the benefit of the Union and all its members; namely, consisting of:

"(a) A Court-ordered convention conducted in accordance with the lawful provisions of the Union's Constitution;

"(b) Court orders protecting intra-Union pre-convention political activity from illegal officer restraint and reprisal; and

"(c) Court proceedings to enforce this Court's orders, as aforesaid.

"(6) That there is no basis for not honoring the aforementioned fee agreement or for withholding payment of the fees billed as aforesaid \* \* \*."

We are satisfied that the findings and conclusions of the trial judge are clearly supported on the record before us in all respects but one. We are concerned that he has rested the amount of the award against the International simply upon the "retainer agreement entered into between Mr. Ratner and the named plaintiffs on the latter's behalf and on behalf of all members of the plaintiff class."[8]  That there was a retainer agreement is beyond question. Its provisions may be taken to be controlling and to support the award insofar as liability has been asserted against the *class plaintiffs*. To that extent and on that basis the findings are adequate, for the compensation therein as fixed by the *parties* to *that* agreement fairly measures the services rendered to the *Moschetta* plaintiffs. They have not appealed.

How to evaluate the legal services which inured to the benefit of the International and its membership for the period from April, 1961 through January 25, 1962 involves a different question. To be sure, compensation at the rates provided in the retainer agreement with the class plaintiffs may be considered as some evidence of the value which the appellee initially placed upon his own services. But that agreement was arrived at when only the class action lay ahead. Counsel could not have then known that the *Alvino*[9] suit would become necessary, nor could he have known of its important impact in paving the

8. See note 3 *supra*.
9. Text, *supra*, and see 46 LRRM 2812 (D. D.C.1960). Judge Tamm expressly found

—correctly we think—that the appellee's services in the Alvino case were to be covered by the compensation award.

way for the convention. The protective court orders, the conferences and other services up to and including the convention, the ultimate reorganization of the International and its restoration to the control of its membership in accordance with the International constitution must be taken into account. The value of legal services so rendered may even be greater than a computation based upon the scale provided in the retainer agreement. In any event the services rendered by the appellee and his associates are to be measured in terms of value of the benefits afforded to the International and its membership. Since the liability of the International and its membership did not here rest upon a contract, *quantum meruit* provides the rule which, we are satisfied, must be applied in an ascertainment of that value.

In different context but to the same end we approached a phase of this problem in Milone v. English [10] where we said:

> "It lies now within the sound discretion of the District Court, though it is under no legal compulsion to do so, to require the International to pay *reasonable* counsel fees to appellants' counsel should the court find, either or both, that they have materially aided in the creation of a fund for the benefit of the International by reason of the eventualities of our remand above authorized, *or that they have benefited the International in other ways*." (Emphasis added.)

We thus recognized the standard to be one of reasonableness, as related to and reflecting benefits to the International "in other ways" than the mere creation of a fund. The appellant insists that section 501(b) limits the allotment of fees to the appellee to whatever money "recovery" may have become available through his efforts. We reject that contention. Congress in section 501(a) has defined the fiduciary status of union officers. They are to execute their trust for the benefit of the organization and its members. Should such officers violate their trust, a member of the union is authorized under section 501(b) to initiate steps looking toward remedial action. Thus, any such member and his counsel are to be protected, all to the end that the membership itself may police its own labor organization, whether the suit seeks damages or an accounting "or other appropriate relief for the benefit of the labor organization."

Here the defalcation and pilfering of the International's treasury by Cross and others, the impairment of the pension fund of the membership, the establishment of proper accounting procedures, the calling of a convention for membership expression and control, and the requirement of conformity by the officers with the International's constitution in their conduct of the business of the International were among the proper subjects of concern to the entire membership. With respect thereto, the accomplishment of benefits to the membership, as "appropriate relief" might well be achieved under court authority without monetary "recovery" as such.[11] The payment of fees earned and reimbursement of expenses incurred became the obligation of the International under traditional equitable principles [12] which were simply called into play pursuant to the authorization for action under section 501. The claimed limitation relied upon by the appellant does not exclude the International's liability for reasonable fees, properly earned. Rather the language is permissive. It means no more than this:

---

10. 113 U.S.App.D.C. 207, 212, 306 F.2d 814, 819 (1962) ; and see Angoff v. Goldfine, 270 F.2d 185, 188–189 (1 Cir. 1959).

11. Johnson v. Nelson, 325 F.2d 646, 650 (8 Cir. 1963) ; and see generally, *Counsel Fees For Union Officers Under The Fiduciary Provision of Landrum-Griffin*, 73 Yale L.J. 443, 468, 470 (1964).

12. Sprague v. Ticonic Bank, 307 U.S. 161, 166–167, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). Here an assessment of less than one dollar per member would discharge the entire judgment as awarded here against the International.

where a monetary recovery has in fact been achieved, that fund may constitute a source from which the trial judge "may allot a reasonable part" for the payment of counsel fees and disbursements.

Appellant would undercut our conclusion as to the fee liability of the International and its membership by a reference to Cunningham v. English.[13] But there we were concerned with a unique situation where the District Court had created a Board of Monitors to assist it in exercising its equitable powers with respect to a complicated situation affecting 1,500,000 union members.[14] The court without notice had entered a consent decree, the effect of which had engaged our attention.[15]

▆ Here almost from the outset, the International was a party. At no time did it controvert the facts as attested in the appellee's affidavit or as perceived and expressed by the District Judge in charge throughout.[16] The International had received the benefits from the appellee's services in various respects including those derived from the class action, and thereafter had taken over prosecution of the litigation. The International and its membership had notice of all proceedings and had participated therein. For the reasons but upon the basis previously treated, there remains only the matter of ascertainment of the value of the benefits to the International and its membership to predicate whatever award the District Court equitably shall determine to be due.[17] On this account only do we now reverse.

Reversed and remanded for further proceedings consistent with this opinion.[18]

FAHY, Circuit Judge, with whom EDGERTON, Senior Circuit Judge, joins, concurring:

I concur in the opinion of the court and add these words respecting the reliance placed by appellant upon Cunningham v. English, 106 U.S.App.D.C. 92, 94, 269 F.2d 539, 541, cert. denied, 361 U.S. 897, 80 S.Ct. 195, 4 L.Ed.2d 152 (1959). In that case the payment of counsel fees by the International was agreed to by two conflicting factions in the International, each claiming to represent the interests of the union members. The plaintiffs, whose counsel fees were in question and who obviously stood to benefit from any decree making the fees payable out of union funds, could not be said to have adequately protected the interests of the union membership in those funds. And the individual defendants who consented to the decree embodying the award of fees for plaintiffs' counsel, also could not be said to have protected the membership interests in the union funds from which the fees were to be paid. The defendants whose control of the union was being challenged had agreed to pay the plaintiffs' counsel fees as part of an arrangement which kept the defendants in office on a provisional basis. General principles of equity required that an opportunity to present their views be given to the union members before an order awarding fees be entered on such an agreement.

13. 106 U.S.App.D.C. 92, 94, 269 F.2d 539, 541 (1959), where we said: "Notice should have been given to the membership before approval by a court of equity of this obligation upon union funds, even if not required by Rule 23." Apart from appellant's failure to make a record on this ground in the District Court, the situation here is clearly distinguishable.

14. English v. Cunningham, 106 U.S.App. D.C. 70, 74, 269 F.2d 517, 521 (1959).

15. *Ibid.*, cert. denied, 361 U.S. 897, 80 S. Ct. 195, 4 L.Ed.2d 152 (1959), and memorandum of Mr. Justice Frankfurter at

361 U.S. 905, 909–910, 80 S.Ct. 187, 188, 189.

16. He found that there was "no basis * * * for withholding payment of the fees," but added "as billed," i. e. per the retainer agreement. This latter phase has been discussed, text *supra*.

17. Cf. Angoff v. Goldfine, *supra* note 10, 270 F.2d at 188–93; Wyoming Ry. Co. v. Herrington, 163 F.2d 1004, 1006–1007 (10 Cir. 1947); Blackhurst v. Johnson, 72 F.2d 644, 648 (8 Cir. 1934).

18. Cf. Sherwin v. Welch, 115 U.S.App. D.C. 328, 331, 319 F.2d 729, 732 (1963).

In the present case, however, the governing body of the appellant union, acting in the name of the union with respect to appellee's claim for fees, has done all within its powers to protect the interests of its members in the union's funds. When the motion for payment of counsel fees was made by appellee the appellant union, acting on behalf of its members, vigorously opposed the motion on the grounds discussed in the court's opinion. There is no such danger that the rights of the members have been compromised by those with possibly adverse interests as there was in *Cunningham*. The interests of the union have been adequately protected by the International. They have not been determined by a consent decree, but by the judgment of the court in a contested proceeding. Accordingly adoption of the procedure used in *Cunningham* is not required.