**Joseph A. YABLONSKI et al.**

v.

**UNITED MINE WORKERS OF AMERICA et al.**

Civ. A. Nos. 1662-69, 1779-69, 2413-69, 3061-69.

United States District Court, D. Columbia.

June 22, 1970.

Joseph L. Rauh, Jr., and John W. Douglas, Washington, D. C., for plaintiff.

Paul R. Connolly, Washington, D. C., for defendant.

---

42. *Chimel v. California, supra,* 395 U.S. at 763–764, 766, 89 S.Ct. 2034.

## OPINION AND ORDER

CORCORAN, District Judge.

### I.

The Court has before it four separate cases involving the candidacy of the late Joseph A. Yablonski for President of the United Mine Workers of America. Each case is predicated upon provisions of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S. C. § 401 et seq. (1964), the so-called "Landrum-Griffin Act."

For purposes of simplification each case is assigned an arbitrary label, i.e., C.A. No. 1662–69 is hereafter referred to as the "mailing list" case; C.A. 1799–69 as the "reinstatement" case; C.A. 2413–69 as the "journal" case; and C.A. 3061–69 as the "fair election" case. The defendants have moved to dismiss all but the "journal" case on grounds of mootness. The plaintiffs have moved for attorney's fees in each case and oppose defendant's motion to dismiss arguing that their claims for fees keep each case alive.

### II.

A brief background of these cases will help to place the arguments in perspective.

The "mailing list" case was based on § 401(c) of the LMRDA (29 U.S.C. § 481(c) ). Section 401(c) provides *inter alia* that it shall be incumbent upon the union to distribute, at the expense of a bona fide candidate, campaign literature of such candidate to all union members in good standing. After argument the Court held Yablonski to be a bona fide candidate and granted a preliminary injunction requiring the union to distribute Yablonski's campaign literature at Yablonski's expense.

The "reinstatement" case relied principally on § 609 of LMRDA (29 U.S.C. § 529) which prohibits any disciplinary action against a union member in retaliation for the exercise of that member's rights under the Act. Finding that Yablonski had been removed from a union office in retaliation for his candidacy, this Court entered a preliminary injunction requiring the union to reinstate Yablonski to the position he held prior to the announcement of his candidacy.

The "journal" case was grounded in part on § 401(c) and § 401(g) of the LMRDA (29 U.S.C. § 481(c) and (g) ) and in part upon § 501(a) of the same Act (29 U.S.C. § 501(a) ). Section 401(c) prohibits *inter alia* discrimination in favor of or against any candidate with respect to the use of mailing lists in a union election. Section 401(g) expressly prohibits the application of any monies received by way of dues and assessments to the promotion of the candidacy of any person in a union election. Section 501(a) imposes fiduciary obligations upon the officers and other agents of the unions, particularly in connection with the expenditure of union funds. The Court (Pratt, J.) held the union in violation of § 401(c) and entered a preliminary injunction ordering the union to refrain from discriminating against Yablonski in the *UMW Journal*, the union publication distributed periodically to all union members. Yablonski v. United Mine Workers of America, 305 F.Supp. 868 (D.D.C.1969). The § 501(a) aspect of that case, that union funds were used to print incumbent President Boyle's campaign literature, has not yet been adjudicated.

The "fair election" case was based on the theory that all potential violations of Subchapter V of the Act (which governs elections) (29 U.S.C. §§ 481–483) and of the union constitution were enjoinable under § 401(c). The Court (Hart, J.) concluded that it had limited jurisdiction in this case and, upon assurances by the union that it would comply with all the requirements of the Act and the union constitution, the Court declined to issue a preliminary injunction.

After argument this Court orally dismissed the "mailing list" (C.A. 1662–69), the "reinstatement" (C.A. 1799–69), and the "fair election" (C.A. 3061–69) cases as having been mooted by reason of the

fact that the union election is over and no further relief is available in this Court. The "journal" case was consolidated by consent of all parties with still another Yablonski case (C.A. 3436–69) which alleges violations of fiduciary obligations under § 501(a) of LMRDA. That case is yet to be heard.

Notwithstanding dismissals of the "mailing list", "reinstatement" and "fair election" cases the Court nevertheless heard argument as to whether it could grant attorney's fees for services rendered in connection with such cases. Thereafter the Court took the fee-award question under advisement. After careful examination of the LMRDA, its legislative history, and the relevant case law, the Court now concludes that the awarding of attorney's fees is not appropriate in those cases.

### III.

The LMRDA is a highly complex and intricate statute regulating the conduct of a wide range of union affairs. A close examination of the statute shows that its remedies are carefully tailored to its specific substantive provisions. Each right given union members by the statute is accompanied by a specific, detailed remedy. These include private causes of action for damages or injunctions, actions or rule making by the Secretary of Labor pursuant to complaints of individual members, and criminal sanctions. It is important to reemphasize, however, that each provision has its own remedy and the remedies are not interchangeable.

Congress expressly provided for the recovery of attorney's fees in only two instances, viz. (1) where a union member successfully establishes that he has been denied access to reports, books, records and accounts in violation of § 201(c), and (2) where a union member successfully sues for damages on behalf of the union under the fiduciary provisions of § 501(a).

### IV.

The legislative history of the LMRDA clearly demonstrates that Congress intended the award of attorney's fees to be available only for violations of those two provisions. H.R.Rep.No.741, 86th Cong., 1st Sess. 95 (1959), U.S. Code Cong. & Admin.News 1959, p. 2424. Congress was well aware that this limitation would impose a financial burden on those members bringing actions under other sections. Thus the House Minority Report strongly urged that the right to attorney's fees be extended to all violations of LMRDA and individual members of the Senate took the same position arguing that it would be unduly burdensome to those seeking vindication of their statutory rights. 105 Cong. Rec. 10094 (1959) (remarks of Senator Goldwater). However, those views were not adopted by Congress in reporting out the final bill. Such clear Congressional intent must be afforded great weight.

### V.

The case law is in accord. The Supreme Court recently examined in depth the question of when attorney's fees may be awarded in aid of statutory enforcement. Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). Although that case concerned the enforcement of the trademark law (Lanham Act), its principles are applicable to the LMRDA.

After reviewing the history of fee awards, the Court concluded that in the United States "The rule * * * has long been that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract. * * * " Id. at 717, 87 S.Ct. at 1407. Although there are exceptions to the rule, the Court emphasized that those exceptions "were not developed in the context of statutory causes of action for which the legislature had prescribed in-

tricate remedies." *Id.* at 719, 87 S.Ct. at 1408. The Court concluded:

> "*When a cause of action has been created by a statute which expressly provides the remedies for vindication of the cause, other remedies should not readily be implied.* Philp v. Nock, 17 Wall. 460, 21 L.Ed. 679 (1873); Teese v. Huntingdon, 23 How. 2, 16 L.Ed. 479 (1860); cf. Day v. Woodworth, 13 How. 363, 14 L.Ed. 181 (1852). Congress has overturned the specific consequence of *Philp* and *Teese* by expressly allowing recovery of attorney's fees in patent cases and has selectively provided a similar remedy in connection with various other statutory causes of action. But several attempts to introduce such a provision into the Lanham Act have failed of enactment. We therefore must conclude that Congress intended § 35 of the Lanham Act to mark the boundaries under the Act. *A judicially created compensatory remedy in addition to the express statutory remedies is inappropriate in this context.*" (Emphasis supplied.)

As in the Lanham Act, Congress provided the LMRDA with detailed specific remedies for each of its substantive provisions.

As noted, *supra*, in only two instances does the LMRDA provide for the award of attorney's fees, i.e., in actions arising under §§ 201(c) and 501(a), and none of the cases here under discussion can be said to clearly fall within the scope of these two specific sections. In the language of *Fleischmann*, those sections "mark the boundaries of the power to award monetary relief" in cases arising under the LMRDA. Congress had the opportunity to extend this remedy beyond the two specific provisions but chose not to do so. To now award fees in these cases the Court would have to ignore the clear Congressional intent

and carve out an implied remedy that attorney's fees are available for a violation of any section of LMRDA. The Court is not at this time inclined to so rule.

The plaintiffs rely heavily on Bakery and Confectionery Workers International Union v. Ratner, 118 U.S.App.D.C. 269, 335 F.2d 691 (1964), and Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Both cases, however, are easily distinguishable. In *Ratner* the action was premised upon violations of § 501(a). The Court found that there had been gross violations of the fiduciary obligations of the union's officers thereby establishing liability. The real issue in *Ratner* was not whether a fee award could be made but rather whether it could be made in the absence of a monetary recovery. The Court held the language of § 501(b) to be permissive and so said that it was not mandatory that the fee award be made out of the money recovered but that the Court could look to other sources. Bakery Workers Union v. Ratner, *supra*, 335 F.2d at 696–697.[1] It is to be reemphasized that the cases dismissed by this Court were not premised upon § 501(a) and, importantly, that no malfeasance on the part of the officers has yet been established. The most that has been established is a factual situation sufficient to support preliminary injunctions designed primarily to bolster the candidacy of Yablonski.

In *Auto-Lite* the action was brought under the Securities and Exchange Act of 1934 and concerned the implied private right of action for violation of § 14(a) of the Act. The Court held that a party who establishes a violation of the securities laws by their corporation and its officials has a right to be reimbursed by the corporation for the costs of establishing the violation. Mills v. Electric Auto-Lite Co., *supra*, 396 U.S. at

---

1. This would seem to agree with the supplementary views of certain Congressional members that only a successful suit and not a monetary recovery is the prerequisite for reimbursement H.R.Rep.No.

741, 86th Cong., 1st Sess. 82 (1959). See also Comment, Counsel Fees for Union Officers under the Fiduciary Provision of Landrum-Griffin, 73 Yale L.J. 443, 468–470 (1964).

**620**

389, 90 S.Ct. at 624. It should be emphasized again that in *Yablonski* liability has yet to be established. The Court carefully distinguished the *Fleischmann* case. It pointed out that the Securities Act did not have the meticulously detailed remedies which Congress gave the Lanham Act. And the degree of similarity in the specificity of remedies between the LMRDA and the Lanham Act has already been noted. Further, in the one private cause of action under LMRDA which is closely analogous to the issue involved in *Auto-Lite,* the quasi-derivative action under § 501(a), Congress expressly provided for the awarding of attorney's fees.

In both *Fleischmann* and *Auto-Lite* the Court pointed to the judge-made exception of awarding fees where the plaintiff "successfully maintained a suit" that *"benefits a group of others in the same manner as himself."* [Emphasis supplied.] Fleischmann Corp. v. Maier Brewing Co., *supra,* 386 U.S. at 718–719, 87 S.Ct. at 1407; Mills v. Electric Auto-Lite Co., *supra,* 396 U.S. at 390, 90 S.Ct. at 625.

■ This Court is not satisfied that the suits instituted by Yablonski and dismissed by the Court were intended to or did benefit the union except in the most indirect and theoretical way. Rather, the suits were brought with the primary purpose of aiding Yablonski in his election bid. Accordingly, there is no basis for the award of attorney's fees and they will be denied.

The issue of violations of § 501(a) and the scope of that section is embraced in the last *Yablonski* case (C.A. 3436–69) with which the "journal" case has been consolidated and which is yet to be adjudicated. If in that case the plaintiffs are able to establish violations of § 501(a) then an award of attorney's fees under § 501(b) will be appropriate.

In denying attorney's fees in the cases already dismissed the Court in no way reaches the issue to be decided in C.A. 3436–69.

So ordered.

ORDER

In accordance with opinion filed this 22nd day of June, 1970, it is

Ordered that the motion of the defendants to dismiss C.A. 1662–69, C.A. 1799–69, and C.A. 3061–69 as moot is granted, and it is

Further ordered that the motion of the plaintiffs for attorney's fees in C.A. 1662–69, C.A. 1799–69, and C.A. 3061–69 is denied, and it is

Further ordered that the motion of both parties to consolidate C.A. 2413–69 with C.A. 3436–69 is granted.