449 F.2d 1193
 78 L.R.R.M. (BNA) 2142, 146 U.S.App.D.C. 117,
66 Lab.Cas. P 12,004, 66 Lab.Cas. P 12,016
 Angelo J. CEFALO et al.
v.
Elwood MOFFETT, Individually and as International President
of District 50, Allied and Technical Workers, et
al., Appellants.
Angelo J. CEFALO et al.
v.
Elwood MOFFETT et al. United Steelworkers of America,
AFL-CIO, Appellant.
Angelo J. CEFALO et al.
v.
Elwood MOFFETT et al. International Union of "District 50",
Allied and Technical Workers of the United States
and Canada, Appellant.
 Nos. 71-1663-71-1665.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Aug. 20, 1971.
Order Filed Aug. 23, 1971.
Opinion Filed Sept. 3, 1971.
As Amended Sept. 14, 1971.
 
 Mr. Joseph C. Wells, Washington, D. C., with whom Mr. Winthrop A. Johns, Washington, D. C., was on the motion, for appellant International Union of District 50, Allied and Technical Workers in No. 71-1665.
 Mr. George H. Cohen, Washington, D. C., for appellant United Steelworkers, of America, AFL-CIO, in No. 71-1664.
 Mr. Ross O'Donoghue, Washington, D. C., was also on the motion for appellants Elwood Moffett, et al., in No. 71-1663.
 Mr. David N. Webster, Washington, D. C., for appellees.
 Before LEVENTHAL, ROBB and WILKEY, Circuit Judges.
 PER CURIAM:
 
 
 1
 This case is before us on an appeal from a preliminary injunction that does not question the basic thrust of the injunction but seeks a modification that the District Judge declined to provide. Thus the matter is before us on the District Court's findings of fact, not challenged by appellants. While we have modified the injunction in one respect, the essence of our action, as explained in this opinion, is to enhance rather than to curb the District Court's latitude and discretion in achieving appropriate final disposition.
 
 I PROCEDURAL BACKGROUND
 
 2
 Appellees Cefalo and Vullo are members in good standing of the International Union of District 50, Allied and Technical Workers of the United States and Canada [hereinafter "the Union"]. They brought this action in the District Court pursuant to Sec. 501 of the Labor-Management Reporting and Disclosure Act.[1] [LMRDA] seeking redress for a number of alleged breaches of fiduciary duty by the Officers of the Union.[2] In addition to asking for an accounting of relevant expenditures, restoration of funds allegedly misspent, and actual and punitive damages against the appellant officers, appellees prayed that appellants be restrained from terminating the Union's existence by effectuating a contemplated merger of the Union with the United Steelworkers of America. The merger of the Union with the Steelworkers was to have been consummated at a Constitutional Convention of the Union scheduled for August 23-25, 1971, in Washington, D. C.[3] By motion filed July 9, 1971, appellees sought a preliminary injunction preventing the convention from passing upon the merger. Following discovery proceedings, a hearing on the preliminary injunction was held on August 13, 1971, at which the District Court was presented with oral testimony and documentary evidence and heard argument of the parties.[4] Thereafter, on August 18, 1971, the District Court filed findings of fact and conclusions of law and entered an order granting a preliminary injunction, enjoining, during the pendency of the litigation appellants, "their agents or anyone in concert with them * * * from presenting or voting upon or effectuating any merger between the International Union of District 50, Allied and Technical Workers and the United Steelworkers of America, AFL-CIO or dissolution of the International Union of District 50, Allied and Technical Workers."
 
 
 3
 Thereafter, later that same day, counsel for all parties appeared before the District Court at the request of counsel for the Union who sought clarification of the order. Essentially, counsel for the Union requested the District Court to amend or modify the order to permit the Union convention to authorize a referendum vote of the entire Union membership on the question of whether the merger with the Steelworkers Union should be carried out.[5] The District Court declined to modify its order and we granted expedited hearing of this appeal, in which appellants sought partial summary reversal of the order so as to permit the convention to authorize the holding of a membership referendum on the merger question.
 
 
 4
 After hearing argument, we entered an order modifying the District Court's order so as to permit the August 23 convention to authorize the Executive Board of the Union elected at such convention to adopt a plan for the holding of a referendum of the membership of the Union on the question of the merger. However, we conditioned the implementation of such a plan and the holding of the referendum upon the prior approval of the plan by the District Court. We further directed that in considering whether to approve such a plan the District Court might require such provisions as it deemed necessary or appropriate to ensure a free and informed vote of the Union's membership. In particular we directed the District Court to consider whether the plan for conducting the referendum would avoid perpetuation of the consequences of the alleged breaches of trust which, on the District Court's finding of likelihood that appellees would prevail on the merits constituted the basis for the entry of its preliminary injunction.
 
 
 5
 Finally, we directed that in making its determination the District Court should seek and give consideration to the comments of the Secretary of Labor and that if the District Court declined to approve a referendum plan it should enter an order to that effect and set forth its findings and reasons.
 
 
 6
 The short time available for consideration of this appeal before the beginning of the Union convention on August 23, 1971, precluded the preparation and issuance of an opinion to accompany our order modifying the injunction. As a consequence of our order, however, the appellant Union now has the opportunity to prepare a referendum plan to be submitted in due course to the District Court for its consideration. We have therefore determined to issue this opinion to explain the basis for our order and to provide guidance to the parties and the District Court in the conduct of the forthcoming proceedings.
 
 II FACTUAL BACKGROUND
 
 7
 To gain an understanding of the positions of the parties and to elucidate the basis for our order modifying the District Court's injunction, it is necessary first to set forth certain background facts concerning this litigation. The conflict between the parties essentially arises in the context of a struggle for control of the Union between a group led by appellee Cefalo and the supporters of the incumbent President. Moffett.
 
 
 8
 A. The 1970 Election and Subsequent Agreement for New Elections
 
 
 9
 In November 1969, appellee Cefalo, then serving as International Vice-President of District 50, announced his candidacy for the office of International President in opposition to appellant Moffett. In the election of International Officers conducted on May 12, 1970, Cefalo was defeated and Moffett reelected to the Presidency of the Union.
 
 
 10
 Under the Union Constitution, duly elected delegates to Constitutional Conventions (normally held every 5 years) elect the Union Executive Board. The Three General Officers (President, Vice-President, Secretary-Treasurer) of the International, however, are elected by a referendum vote of the entire membership.
 
 
 11
 After the 1970 referendum election of general officers (in which Moffett defeated Cefalo) and the election of the Executive Board by the 1970 Constitutional Convention, appellee Cefalo protested the conduct of those elections and filed a formal complaint with the Secretary of Labor under Section 402 of the LMRDA.[6] The Secretary of Labor, as he is required by the Act, investigated the complaint, found reasonable cause to believe that the elections of International Officers and Executive Board Members had been improperly conducted in violation of LMRDA Section 401.[7] Accordingly, the Secretary filed suit on September 25, 1970, in the District Court for the District of Columbia[8] to set aside these elections.
 
 
 12
 Following negotiations between the Union and the Secretary, a stipulated order was agreed to on March 10, 1971, which provided that the Union would conduct under supervision of the Secretary: (1) nomination and election of Local Union delegates to a new convention; (2) nomination and election of the International Executive Board at a convention "to be held during the month of August, 1971"; and (3) after the convention, nomination of International Officers and secret ballot election among District 50's members in good standing for any such contested offices.
 
 
 13
 Thereafter, a Call for a Constitutional Convention was approved by the Union Executive Board and on March 15, was distributed to the local Union. The "Call" to convention specified that the "purpose" of the convention was "electing International Union District 50 Executive Board Members." The call further provided that "this convention will have authority to take appropriate action on all matters which may properly be submitted to the convention."[9] Delegates to the convention were selected in secret ballot elections held in the local unions during the month of April under the supervision of the Secretary of Labor.[10]
 
 
 14
 The District Court found that because of a requirement that local unions pay the expense of their own delegates to the convention, it was the practice of many locals to elect members of the field staff of the International Union to represent them at the convention, since expenses of staff members who attend the convention as delegates are paid by the International rather than the locals. As a result of this practice the District Court found that a "decisive" block of votes at the convention was controlled by the union staff.[11]
 
 B. The Merger Arrangements
 
 15
 Beginning in August 1970, and continuing during the period when the Secretary of Labor was seeking new elections, the officers of the Union were carrying on secret negotiations with the United Steelworkers of America looking toward the eventual merger of the Union into the Steelworkers and consequent dissolution of the Union.[12] The District Court found that an "agreement in principle that a merger would be effectuated along certain lines was reached in January 1971 * * *" and that by February 1971 a draft of the agreement had been prepared and circulated "which was generally similar to the final agreement as executed on April 24, 1971."
 
 
 16
 The District Court found that appellant Moffett knew that the merger would be considered by the August 1971 Constitutional Convention at the time that, pursuant to the Union's stipulation with the Secretary of Labor, the Call for the convention was being issued to the membership. Yet Moffett did not inform the Secretary at that time that the convention, which it was agreed would precede the new election of officers, would pass on the merger, which if approved would terminate the Union's existence and thus effectively prevent the election from being held.
 
 
 17
 Furthermore, the fact that the convention would consider the merger agreement was not made known to the membership until after nearly all the delegates to the convention had been elected. On April 24, 1971, the day that the Executive Board of the Union approved the merger agreement, the field staff of the Union was called in and a meeting held at which the proposed merger was revealed and the staff informed of the considerable pay increases they could expect to receive if the merger were accomplished.[13] The staff was then instructed to return to the local unions and secure passage of a resolution "directing" the locals' delegates to the convention to vote in favor of the merger. In May and June of 1971 announcement of the merger was made in the Union Newspaper but detailed terms of the merger were not fully disclosed. In July of 1971, after this action was filed, the Union Newspaper printed the bulk of the merger agreement but did not disclose the large pecuniary benefits that would flow to the Union Staff. During this period, a large majority of the locals passed the resolution directing their delegates to approve the merger without ever being informed of the manner in which the Union officers and staff would benefit from the merger.[14]III THE BASIS FOR THE DISTRICT COURT'S INJUNCTION
 
 
 18
 The District Court concluded that the Union officers breached their fiduciary duty of trust and fair dealing imposed upon them by Sec. 501 of the LMRDA, first by failing to inform the Union membership of the impending merger prior to the selection of delegates to the convention, and second, in seeking membership approval of the merger after the delegates were selected (via Local "resolutions" directing the delegates to approve the merger) without revealing the existence of a basic conflict of interest resulting from the personal pecuniary benefit that the officers and staff of the Union stood to gain from approval of the merger. This situation was aggravated by the factors which induced many local unions to elect staff members to represent them at the convention. These conclusions are not challenged on this appeal, and we thus do not feel impelled to review them here.[15]
 
 
 19
 Appellants' position is rather that granted the existence of these fiduciary violations, the District Court erred in refusing to modify its injunction to permit a referendum of the membership to be conducted after full disclosure of the entire merger agreement is made. The District Court gave no reason for its refusal to so modify the injunction, and we have been unable to discover from its findings and conclusions why such a referendum would not remove the consequences of the prior failures to disclose, provided an opportunity is given the membership for informed debate on the merger prior to the vote.[16] Indeed, the relief prayed for in appellees' complaint in this respect, was that appellants be restrained from consummating the merger "until such time as the full terms of the merger have been disclosed to the membership and membership approval for the necessary constitutional amendments has been obtained through a secret ballot membership referendum or action of a properly called constitutional convention with delegates chosen by secret ballot in the context of debate over the desirability of the merger."
 
 
 20
 It would thus appear that a properly conducted referendum vote would provide the very relief that appellees requested. Nevertheless, we are aware that the District Court, which heard the testimony and is continuing to try the remainder of this lawsuit on the merits, may have seen some infirmity in the referendum solution which appellants proposed. Perhaps the District Court felt that a referendum conducted by mail would not, in the context of this case, provide a procedurally adequate method of ascertaining the views of the membership. More significantly, we are concerned lest the very act of the present convention in authorizing a referendum give a meaningful, though subtle advantage to the proponents of the merger, at the expense of those who oppose it. For these reasons we provided in our order that the District Court may require such procedures as it deems necessary to ensure a "free and informed vote of the Union's membership, not subject to undue influence." Such procedures might include, but are not limited to, requiring that the referendum vote be taken by secret ballot in person and not by mail; requiring that the Union disseminate to the membership the views and arguments of those opposing the merger as well as supporting it; and appointing an outside group or authority to supervise the referendum.
 
 
 21
 A further consideration supporting our decision to permit the August 23 Convention to authorize the formulation of a referendum plan, was the fact that should the Union be able to develop a plan which is satisfactory to the District Court, the expense of holding another convention at a later time to consider the merger will be avoided. In view of the testimony concerning the Union's already weak financial position, and the fact that the cost of holding a convention was testified to be nearly $250,000, we felt that it would cause the least injury to the Union, without unduly affecting the rights asserted by appellees, to in effect preserve the status quo by allowing the presently convened delegates to authorize a referendum, subject to the later approval of the District Court.
 
 
 22
 IV THE SIGNIFICANCE OF THE NEW ELECTION SOUGHT BY THE
 
 SECRETARY OF LABOR
 
 23
 There remains the possibility that the District Court declined to modify its order to permit a referendum on the merger because it felt impelled to vindicate the rights of the membership to a new election of general officers as was agreed to in the stipulation with the Secretary of Labor, by forbidding a merger under any circumstances so that the scheduled election of officers under the supervision of the Secretary could be held.[17] Indeed, counsel for appellees sought in argument before us to sustain the action of the District Court precisely on the ground that appellees and the Union membership whom they seek to represent in this suit, have an absolute right to a new general election before a merger can be effectuated; otherwise, they argue, the violations of Title IV of the LMRDA which the Secretary found to have infected the 1970 elections will go unremedied. If the District Court had found, as appellees alleged in their complaint, that the incumbent officers intentionally contrived to hold the convention vote on the merger so as to avoid facing a new election, there would be a more substantial basis for this contention since then it could be argued that such intentional maneuvering amounted to a breach of fiduciary duty under Title V of the Act.[18] However in the instant case, the District Court found to the contrary, that the election of general officers had originally been scheduled to take place before the convention, but was set for after the convention "at the insistence of the Secretary of Labor * * to enable Mr. Cefalo and five other District 50 members to appeal their pending expulsion to the convention in accordance with Art. XVI of the District 50 Constitution."
 
 
 24
 To the extent that the District Court may have refused the referendum proposed simply in order to ensure the holding of a new election of officers, we have grave doubts as to its jurisdiction to provide this relief in the present action and on the record before it. In general, violations of Title IV rights are not to be redressed as breaches of fiduciary duties under Title V,[19] but rather under Title IV procedures, as appears from Wirtz v. Local 153, Glass Bottle Blowers Ass'n, 389 U.S. 463, 88 S.Ct. 643, (1968). The Bottle Blowers case emphasizes the congressional determination that unions should be left free to conduct their own elections as far as possible, but that if certain basic democratic principles, embodied in Sec. 401 of the LMRDA, are infringed then government intervention to remedy such infringement is best accomplished by action of the Secretary of Labor. In the words of the Court (p. 473, 88 S.Ct. p. 649):
 
 
 25
 Congress deliberately gave exclusive enforcement authority to the Secretary, having 'decided to utilize the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest.' * * * In so doing, Congress rejected other proposals, among them plans that would have authorized suits by complaining members in their own right.[20]
 
 
 26
 The record before us shows that appellees in the instant case have requested the Secretary of Labor to seek an injunction preventing the merger so as to preserve the right to the scheduled election of general officers that is required under the stipulation order filed in the Secretary's action. The Secretary, however, has refused to do so. His position appears to be that since the delegates to the convention were properly elected in a supervised election, they are qualified under the Union Constitution to vote on and approve the merger, and that if the merger is thus accomplished there will be no necessity for a further election. We are not called upon to express a view as to the Secretary's determination in view of the objectives of the LMRDA. It would seem under the Act as interpreted by the Supreme Court[21] that the decision is his to make and that the District Court, in a suit brought by a member, may lack jurisdiction to enjoin the merger simply in order to allow vindication of Title IV rights in a new election when the Secretary has not sought such relief in vindication of Title IV rights.
 
 
 27
 However, the Secretary has not thus far appeared in the instant case. On an issue of this importance we deem it unwise to proceed on an assumption of the Secretary's views, gleaned from correspondence with the parties, that may not have fully taken into account the kind of evidence that was put before the District Judge, or fully thought through the possible inter-relation of the alleged unlawful election of officers in 1970 and the ensuing impetus to merge with the Steelworkers which undertook to give those officers a harbor. We have therefore directed the District Court to seek the comments of the Secretary of Labor in considering whether or on what terms and conditions to approve a plan for referendum on the merger. It may be that the Secretary will change his view as to the advisability of preserving the opportunity for a new election of officers, and that in that event the District Court should consider the possibility of consolidating the Secretary's action with the instant case for disposition. It may be that the District Court will decide that in any event the referendum on the merger should be held by ballot, rather than by mail, to obviate all possibility of unlawful taint, and it may then prove appropriate, assuming the Secretary supports such a proposal, to hold the two ballot box votes, on election of officers, and on merger, at one and the same time, with supervision of the balloting by the Secretary.
 
 
 28
 We are not to be taken in any sense as mandating a course of action for the future. We are rather setting forth for information of the parties, the Secretary, and the District Court, the inter-related problems that have come to mind within our overview of the matter presented to us. In the haste and under the pressure of an emergent review of a preliminary injunction, which we are loath to disturb, we have made only the modification that we thought appropriate to take advantage of the presence of the convention delegates and their assemblage in convention. Our order does not contemplate approval of the Steelworkers merger, or any similar imprimatur, by the Convention or the Executive Board. They will only serve to provide an authorizing mechanism for obtaining the vote of the Union, freely and fairly ascertained. In achievement of that objective the District Court has latitude, which we have carefully sought to preserve, and the overall problem has a perspective that may be enhanced by the comments of the Secretary of Labor, for which we have made provision.
 
 
 29
 Preliminary injunction modified in part.
 
 
 
 [1]
 29 U.S.C. Sec. 501
 
 
 [2]
 Named as defendants were Elwood Moffett, International President of the Union; and William Bunch, a member of the International Executive Board, who were sued individually and in their capacity as officers of the Union. The Union itself is also a nominal defendant, however, it is in a position analogous to that of a corporation in a share holder derivative action, since the suit is brought seeking relief "for the benefit of the labor organization." See Yablonski v. United Mine Workers, 145 U.S.App.D.C. -, 448 F.2d 1175 (1971)
 
 
 [3]
 Under the Union Constitution only a Constitutional Convention, as the supreme legislative authority of the Union, may approve a merger. Of course such a convention may also authorize a referendum to be determinative of the merger question
 
 
 [4]
 At this hearing the Court granted the motion of the United Steelworkers of America to intervene on the side of defendants
 
 
 [5]
 The union proposed that the referendum be supervised by the Honest Ballot Association or by "anyone else the Court would suggest or approve of," and that no vote would be held until notice was provided to all members of the full terms and conditions of the merger agreement
 
 
 [6]
 29 U.S.C. Sec. 482. Section 402 authorizes the Secretary to bring suit to set aside an election upon complaint of a union member alleging a violation of Sec. 401 (29 U.S.C. Sec. 481). If, after investigation the Secretary finds reasonable cause to believe that an unremedied violation has occurred, he is directed by Sec. 402 to bring suit in the District Court to have the election set aside and a new election ordered under his supervision. The Secretary has authority to settle such a law suit without trial. Wirtz v. Local 153, Glass Bottle Blowers Ass'n., 389 U.S. 463, 472, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968)
 
 
 [7]
 29 U.S.C. Sec. 481
 
 
 [8]
 Hodgson v. International Union of District 50, AT&W, Civ. Action No. 2864-70
 
 
 [9]
 This was consistent with the designation of the convention as a "Constitutional" one. The Union constitution provides for Special Conventions, the business of which must be specified in the Call, and Constitutional Conventions, which are not so limited
 
 
 [10]
 Delegates from local unions in the United States were elected during the month of April, 1971; delegates from Canadian locals were elected during the month of May 1971. The Canadian membership of the Union is less than 10% of the total membership
 
 
 [11]
 There appears to be no clear agreement as to how many delegate votes are in the hands of staff members. Appellees assert that out of 2,060 total votes, approximately, 1,340 are held by staff members. Appellants assert that out of 2,191 total votes, the staff, while holding 1,023 votes will only be able to cast 983 votes because the Union Constitution limits each delegate to casting no more than 5 votes, and many of the staff members hold more than 5 votes. In any event, a substantial, and probably controlling number of votes are in the hands of staff employees and officers of the Union
 
 
 [12]
 Negotiations had begun earlier in 1968 but were broken off following the entry of an $8,000,000 judgment against the Union, in favor of the United Mine Workers. The negotiations were resumed following reversal of that judgment on appeal
 
 
 [13]
 The District Court found that:
 These staff people, composed of regional directors, district directors, assistant directors, and union organizers all subject to appointment by Mr. Moffett, will receive increases under the undisclosed portions of the merger ranging as high as 50%.
 
 
 [14]
 The officers, under the merger agreement, are guaranteed continued employment with the Steelworkers at their current rate of pay for a period of 5 years or until retirement. President Moffett, in the finding of the District Court "is assured of a job with the Steelworkers for 5 years from September 1971 at his current salary of $28,500 per year plus a per diem of $6 per day for any of the 365 days of the year that he doesn't leave his home city and $12 per day plus expenses when he does leave home. He will be eligible for a full retirement on a Steelworkers pension and will not have to run in an election against Mr. Cefalo."
 
 
 [15]
 The Second Circuit has held that suits under Sec. 501 are only available to redress fiduciary violations concerning misuse of money or property. Yanity v. Benware, 376 F.2d 197 (2nd Cir.) cert. denied 389 U.S. 874, 88 S.Ct. 167, 19 L.Ed.2d 158 (1967); Gurton v. Arons, 339 F.2d 371 (2nd Cir. 1964). The majority view however, seems to be that a broader scope of breaches of trust, not limited to those involving money or property, are reachable by a Sec. 501 suit. Johnson v. Nelson, 325 F.2d 646 (8th Cir. 1963); Highway Truck Drivers v. Cohen, 182 F.Supp. 608, (E.D.Pa.1960) aff'd 284 F.2d 162 (3rd Cir. 1960). See Bakery & Confectionary Workers Int. Union v. Ratner, 118 U.S.App.D.C. 269, 335 F.2d 691 (1964) where this court approved the payment of counsel fees to an attorney who had successfully represented union members in a Sec. 501 suit which sought relief for violations not involving property rights, thus impliedly holding that such suits are contemplated under Sec. 501
 
 
 [16]
 Cf. Young v. Hayes, 195 F.Supp. 911, 917 (D.D.C.1961) where in a somewhat different context the court stated:
 The Court * * * is concerned that, consistent with the Landrum-Griffin Act * * * full disclosure be permitted in that the electorate be as fully informed and educated as is possible, and consistent with orderly procedures, as to the pros and cons of the subjects * * * submitted to them for vote."
 
 
 [17]
 This possibility is implicit in the court's conclusion of law number 4, which states:
 "4. Additionally, with due respect for the judgment of the Labor Department, it is clear under the doctrine of Wirtz v. Local 153, Glass Blowers Ass'n, 339 U.S. 463 [88 S.Ct. 643, 19 L.Ed.2d 705] (1968) that no supervening incident should deprive the union members of an adequate opportunity to fairly elect those who are responsible for managing the assets of the Union; and further, that Mr. Moffett and his supporters should not be able to avoid the judgment of the rank and file by the device of a merger he himself negotiated. The rank and file of District 50 are caught in the middle of a power struggle and his Court should afford adequate protection for their interests."
 
 
 [18]
 29 U.S.C. Sec. 501 et seq
 
 
 [19]
 But see, Clark, The Fiduciary Duties of Union Officials under Section 501 of the LMRDA, 52 Minn.L.Rev. 437, 460, 1967
 
 
 [20]
 See also, Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). Where the Court held that the requirement that the Secretary's action under Sec. 402 be the exclusive remedy for election (Title IV) violations, precluded a district court from taking Title IV violations into account in determining whether it had jurisdiction to entertain a union member's suit for violation of his rights under Title I
 
 
 [21]
 Wirtz v. Local 125, Laborers' Union, 389 U.S. 477, 88 S.Ct. 639, 19 L.Ed.2d 716 (1968); Wirtz v. Local 153, Glass Bottle Blowers Ass'n., 389 U.S. 463, 88 S.Ct. 643 (1968); Calhoon v. Harvey, 378 U.S. 134, 85 S.Ct. 292 (1964)