**MARDEL SECURITIES, INC., Plaintiff,**

v.

**ALEXANDRIA GAZETTE CORPORATION and Charles C. Carlin, Defendants.**

**In re Report of James H. SIMMONDS and C. Wynne Tolbert, filed July 15, 1964.**

**Civ. A. No. 1519.**

Unietd States District Court
E. D. Virginia,
Alexandria Division.

Dec. 21, 1967.

Lawrence W. Douglas, Arlington, Va., for Simmonds and Tolbert.

Royal E. Blakeman, New York City, Alfred Z. Bernstein, Alexandria, Va., for Mardel.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

The report of the attorneys formerly representing Mardel Securities, Inc., the plaintiff in the above action, is an aftermath of the prolonged litigation in which the plaintiff prevailed in a stockholder's

derivative action.[1] The present controversy is between the plaintiff and their former counsel on the question of attorneys' fees. Following the affirmance of the judgment entered by the district court, Carlin paid the judgment to Alexandria Gazette Corporation as follows:

| | |
|---|---|
| Principal of judgment | – $125,117.20 |
| Interest – 4/20/62 through 9/12/63 | – 10,530.70 |
| Cost of transcript | – 612.03 |

Carlin likewise paid to Messrs. Simmonds and Tolbert, attorneys for Mardel, the sum of $740.91, representing taxable court costs, and the further sum of $5,218.30 to the Special Master to whom this matter was referred following the district court's reported opinion.

In turn, and in response to the judgment order, Alexandria Gazette Corporation paid out the following:

| | |
|---|---|
| To Messrs. Simmonds and Tolbert (attorneys' fees and interest on same) | – $26,566.67 |
| To Stanton, Minter and Bruner (accounting services) | – 6,534.17 |
| To Messrs. Simmonds and Tolbert, for Seymour Schneidman and Associates (accounting services) | – 2,500.00 |

Messrs. Simmonds and Tolbert thereupon disbursed certain funds so received:

| | |
|---|---|
| To Seymour Schneidman and Associates (accounting services as above) | – $ 2,500.00 |
| To Mardel Securities, Inc. (taxable court costs) | – 740.91 |

As indicated by the record herein, the Court awarded counsel fees to the successful attorneys in the stockholder's derivative action, same being in the sum of $25,000.00. In the reported opinion of the district court, it is said:

"Manifestly, in this type of action counsel for the plaintiff should be allowed a substantial fee for services rendered in behalf of the corporation. The recovery is, as noted, for the benefit of the corporation. In the absence of any agreement, and without knowledge as to the additional work required before the master and perhaps an appellate court, the amount of such fee should be reserved for further determination, but any decree should specify that the Court will make an appropriate allowance after the exhaustion of all appeals."

The reference to the Special Master followed. On July 11, 1962, and approximately six weeks prior to the entry of the final judgment order, the district court filed a supplemental memorandum dealing with certain questions, among

1. See reported opinions: Mardel Securities, Inc. v. Alexandria Gazette Corp., 183 F.Supp. 7 (E.D.Va., 1960), affirmed, Mardel Securities, Inc. v. Alexandria Gazette Corporation, 320 F.2d 890 (4 Cir., 1963).

which was the subject of attorneys' fees wherein the court said:

"Ordinarily the ascertainment of attorneys' fees to be paid to counsel for a minority stockholder, for services rendered which result in a benefit to the corporation, would await the outcome of any appeal. This Court so indicated in its original memorandum. Being desirous of disposing of all matters in anticipation that an appellate court may be able to review the action of the trial court, and after conference with counsel, the Court finds that the attorneys for the plaintiff should be allowed a fee of $25,000.00 predicated upon the following assumptions:

(1) That no appeal is taken or the case is otherwise compromised, or

(2) If an appeal is taken, the findings of the trial court are substantially affirmed, and

(3) That no consideration has been given to any additional fee on appeal, and

(4) That the fee hereby allowed covers compensation for all legal services by counsel for plaintiff up to and including the entry of the final judgment order of this court.

"From the foregoing it will be noted that the appellate court may, in its discretion, make an allowance to counsel for the plaintiff for services on appeal or, should the appellate court be so advised, it may remand with directions for the district court to determine such additional amount, if any. Either party may take issue with the allowance to the date of the entry of the judgment order."

Apparently no issue was raised with respect to the allowance of attorneys' fees on appeal. At least the opinion of the United States Court of Appeals for the Fourth Circuit makes no mention of counsel fees. Carlin, the majority stockholder, appealed. Mardel cross-appealed. The judgment of the district court was affirmed in its entirety. The district court judgment order makes this comment:

"It further appearing that counsel for the plaintiff should be allowed a substantial fee for services rendered in behalf of the corporation up to the present time, and that judgment should be entered at this time for services to the date hereof, and

\*　　\*　　\*　　\*　　\*　　\*

"Now, therefore, it is ADJUDGED and ORDERED:

\*　　\*　　\*　　\*　　\*　　\*

"5. That the firms of Tolbert, Lewis and FitzGerald of Courthouse Square, Arlington, Virginia, and Simmonds, Culler, Damn & Coleburn of Courthouse Square, Arlington, Virginia, shall be paid the sum of $25,000.00, together with interest from the date of this judgment at 6% per annum, for legal services in instituting and conducting this action up to the present time, which amount shall constitute a lien against any funds recovered by the Alexandria Gazette Corporation from Charles C. Carlin, Jr. pursuant to this judgment."

The original complaint was filed on May 6, 1957, by A. Carter Whitehead, then of the firm of Clarke, Richard, Moncure & Whitehead. On August 29, 1957, Carlin filed a counterclaim against Mardel seeking damages in the sum of $1,000,000.00. On some date prior to November 27, 1957, James H. Simmonds apparently became co-counsel with Whitehead for, on the latter date, Oren R. Lewis noted his appearance [2] as counsel in association with Whitehead and Sim- .

---

**2.** The appearance form indicates that Lewis was counsel for "defendant." Obviously this was a typographical error. Lewis was then practicing law under the firm name of Lewis and Tolbert. Before the matter was heard by the Special Master, Lewis retired from the practice of law to assume other duties. The successor firm to Lewis and Tolbert was Tolbert, Lewis and FitzGerald. The "Lewis" mentioned in the successor firm is the son of the "Lewis" who assumed other duties.

monds. From that date on through the trial in the district court, Messrs. Lewis and Simmonds took over the litigation in behalf of plaintiff. Whitehead, while never actually retiring as counsel, ceased to actively participate.

The report of Messrs. Simmonds and Tolbert, which presents the existing controversy, indicates that from the $26,-566.67, representing counsel fees awarded plus interest, the distribution was as follows:

| | |
|---|---|
| To A. Carter Whitehead ($2,500.00, plus interest) | — $2,656.67 |
| To Simmonds, Culler, Damn and Coleburn ($8,750.00, plus interest) | — 9,455.00 |
| To Tolbert, Lewis and FitzGerald, and its predecessor Lewis and Tolbert ($8,750.00, plus interest) | — 9,455.00 |

Prior to the filing of the aforesaid report, the controversy arose with Mardel. The report reflects that the balance remaining in the hands of Messrs. Simmonds and Tolbert is $5,000.00, which they have offered to remit to the plaintiff, but which offer has been rejected. Mardel has filed objections to the report. While it is difficult to pinpoint the precise objection, it can be stated that (1) Mardel claims that the attorneys are limited to the sum of $7,-500.00 as stated in the letter-contract dated November 12, 1957, and the balance of the fee allowed inures to the benefit of Mardel, (2) if the balance does not inure to the benefit of Mardel, it should be returned to the Alexandria Gazette Corporation for the benefit of its stockholders, including Mardel as a 48% minority stockholder, (3) that such portion of the report as refers to an "oral directive" of the court as to any division of fees between attorneys is erroneous, (4) the report is erroneous insofar as it purports to interpret the judgment order dated August 27, 1962, and (5) even if Messrs. Simmonds and Tolbert are entitled to the $25,000.00, they are required to reimburse Mardel for legal expenses and other items incurred prior to the institution of the action on May 6, 1957, which latter action was successful.

While at all times expressing doubts as to the jurisdiction of this court to determine the argument between Mardel and its now former counsel, as the case was actually terminated and became final when the mandate from the United States Court of Appeals was received on July 31, 1962 (and thereafter the time for applying for certiorari expired), it is nevertheless possible that this right stems from the inherent powers of a court to bring to a conclusion such matters concerning which it has previously determined, similar to the reasoning supporting ancillary jurisdiction in a form of the "clean-up" doctrine. Angoff v. Goldfine, 270 F.2d 185 (1 Cir., 1959). In any event, the parties (other than Alexandria Gazette Corporation and Carlin) have requested this court to exercise jurisdiction and a full hearing has been conducted.

When Messrs. Lewis and Simmonds entered the picture, a letter-contract dated November 12, 1957, was executed by Lewis, Simmonds, one James William Fletcher,[3] and accepted by Mardel on November 22, 1957. Five days after Mardel's acceptance, Lewis formally noted his appearance as associate counsel with Whitehead and Simmonds. At that time the case had been pending slightly more than six months. The agreement of November 12, 1957, after

---

3. Fletcher is unknown to the court. To the Court's knowledge, he never appeared. If he was ever present he was not presented or introduced to the court.

referring to the complaint filed by Whitehead in behalf of Mardel and reciting the counterclaim filed by Carlin, authorizes Messrs. Fletcher, Lewis and Simmonds to represent Mardel on its claim and counterclaim on the following basis:

"1. For the sum of $7,500.00, do the necessary legal work in association with the firm of Clarke, Richard, Moncure and Whitehead, and try the case in the District Court both on the principal claim and on the counterclaim. Upon the entry of a judgment on the merits by the District Court, the aforesaid fee of $7,500.00 will have been earned by us.

"2. In the event the defendants or one of them appeals from the judgment of the District Court, as above set out, we will handle the legal services on the appeal to the Court of Appeals for the Fourth Circuit for the sum of $2,500.00.

"3. In the event you [Mardel] are dissatisfied with the judgment of the District Court as set out in Paragraph 1, we will be under no obligation to accept employment for this appeal but will discuss same with you to see if a mutually agreeable contract of employment can be entered into for such appeal.

\* \* \* \* \* \*

"All costs and cash disbursements made by us shall be reimbursed by you in addition to the fees indicated above.

\* \* \* \* \* \*

"Any fees heretofore or hereafter paid to Clarke, Richard, Moncure and Whitehead shall in nowise affect the fee arrangement with us."

In the interim period between the execution of this letter-contract in November 1957, and the district court's reported opinion of April 22, 1960, there were numerous discussions between Lewis and Schneidman, president of Mardel, relative to fees. As early as March 17, 1959, Schneidman inquired of Lewis as to the possibility of recovering legal expenses "that we have incurred *in this suit,*" to which Lewis replied in part:

"It is true that in derivative stockholder suits on occasion costs, including attorneys fees, are some times assessed against the corporation. \* \* \* \*"

\* \* \* \* \* \*

"I can assure you, however, that, when the time comes, we will make all necessary motions to collect any costs, including attorney fees, that we can legally claim either against Mr. Carlin personally or the corporation, and that we will contest any unjustified claim for costs and attorney fees that there conceivably might be assessed against Mardel."

It was not until February 1960, that Messrs. Lewis and Simmonds realized that the original and amended complaints prepared by Whitehead had failed to request attorneys' fees. By order entered on February 29, 1960, the court permitted an amendment to the complaint to include a request for counsel fees. The Clerk's file reflects that this was the same date on which final argument was conducted at Alexandria. By agreement of counsel, as indicated by correspondence in the case file, no court reporter attended this session. While the recollection is dim at this time, the Court is confident that, upon entering the order amending the complaint, the Court stated that, if Mardel was successful, any allowance of attorneys' fees would have to include Whitehead and Fletcher, or that counsel would otherwise have to agree, as Whitehead had not appeared in the case from its early stages and Fletcher was unknown.[4] This is obviously the "oral directive" to which Messrs. Simmonds and Tolbert

---

4. As observed from the report, Whitehead was paid $2,500.00 by Messrs. Simmonds and Tolbert in the distribution of the sum of $20,000.00, which was as per agreement with Whitehead. Fletcher received $2,500.00 of the original fee of $7,500.00 paid by Mardel and did not participate further.

make reference. The Court recalls that Schneidman attended this session.

Subsequent to the opinion of April 22, 1960, which did not incorporate any judgment as the issue of damages was to be referred to a Special Master, Lewis wrote to Schneidman on June 16, 1960. Lewis ceased the practice of law, withdrew from the firm of Lewis and Tolbert, and assumed his new duties on the following day. In reviewing the proceedings, Lewis had this to say on the subject of fees and costs:

"The bill for services rendered by the firm in concluding the matter by the entry of a judgment will, naturally, be on the basis of our original written agreement, together with our share of such amount as the Court may award at the time of the entry of the final judgment, and you will be billed at that time. However, in order to keep the records straight, I am enclosing a statement herewith covering actual out-of-pocket expenses paid, which were to be in addition to the agreed fee for which I would appreciate your sending me your check."

Schneidman answered the foregoing letter with lavish praises for "the wonderful job that you have done on behalf of the minority stockholders and the corporation against Charles Carlin and his crew." [5] He further referred to the bill for out-of-pocket expenses in the sum of $472.50, and said:

"While we are on the subject of bills, am I correct in my understanding that Mardel will be reimbursed for all of their legal fees and disbursements, such as the bill you enclosed with your letter, at the conclusion of the trial, assuming Mardel is successful. As you know, our legal bills have been substantial and I would like to get an opinion from you as to how much of these legal bills we can ultimately recover."

A copy of the above letter was apparently forwarded to Messrs. Simmonds and Whitehead. As Lewis had assumed his new duties, it is a fair assumption that he felt it improper to give any opinion to Schneidman. This letter was written more than two years prior to the court's memorandum of July 11, 1962, in which the allowance of $25,-000.00 was made to counsel, which was followed by the final judgment order on August 27, 1962. Apparently Schneidman never received a written answer to his inquiry for, on March 6, 1962, Schneidman wrote to Tolbert with respect to the claim of Seymour Schneidman & Associates for accounting services, which claim was considered and determined during a night session at Norfolk.[6] Included in this letter was the following inquiry:

"I would also like to ask at this point what legal fees paid to other attorneys besides you and Jim [Simmonds] relative to this law suit can be charged to Carlin. As you know, Mardel has paid considerable legal fees prior to the time of the start of your services and I think this should be a proper charge against Carlin in this suit."

Whether this specific inquiry was ever answered is not revealed by the record. There is an unexplained pencil notation on the original, but Tolbert was never questioned as to same. However, once again, Schneidman either received a reply verbally, or he otherwise chose not to press the issue. The Court finds that he was at all times advised that under no circumstances could he ever recover attorneys' fees paid by Mardel prior to the filing of the action on May 6, 1957.

5. Schneidman's praises diminished as time went on. Following the affirmance of the district court final judgment, Schneidman wrote a letter to Simmonds, dated July 21, 1963, in which he criticized Simmonds, Lewis, the district court, and the Court of Appeals. Since courts must be accustomed to criticism, this is of no consequence.

6. This claim was apparently the subject of a verbal order as the final judgment order of August 27, 1962, indicates that Mardel took exception to the amount allowed. Whether this was assigned as error on cross-appeal is unknown, but it was not mentioned in the opinion of the appellate court.

It is quite true that Mardel incurred legal fees 'and costs in connection with the Alexandria Gazette matter long prior to the filing of the action on May 6, 1957. It now appears that Mardel was instrumental in the 1952 action of Foster v. Carlin, 218 F.2d 795 (4 Cir., 1955) at which time Mardel's assignor held an option to buy the stock of Charles Carlin's daughter, and in the later action filed by Mardel against the Alexandria Gazette and Carlin in the state court, which latter action was dismissed in January 1957, by a voluntary nonsuit. On these occasions Mardel was represented by Cuneo, a New York attorney, in association with Clarke, Richard, Moncure & Whitehead. These fees and costs were paid in 1954 and 1955, including fees paid to Cuneo and Whitehead in representing Sara Perinne Carlin in the *Foster* case. They are totally unrelated to the litigation filed in 1957, except that Whitehead was counsel. While the decision in Foster v. Carlin enabled Mardel to become a minority stockholder in the Alexandria Gazette Corporation, it cannot be considered as any value in determining the rights in a stockholder's derivative action. Nor was the state court receivership or accounting action of any benefit when Messrs. Lewis and Simmonds entered the picture. Indeed, Cuneo, by his actions, provided an arguable defense to Carlin which is discussed in the reported opinions. If anything, Cuneo's services were a hindrance rather than an aid in the stockholder's derivative action, but the court does not intimate that Cuneo's services were of no value in the *Foster* case.

When Lewis and Simmonds were employed in November 1957, they presumably were aware of the prior litigation. The letter-contract specifically excluded "any fees heretofore or hereafter paid to Clarke, Richard, Moncure and Whitehead." It borders on the ridiculous to now state that fees and expenses paid by Mardel in prior litigation should be reimbursed to Mardel from the $25,000.-00 awarded to Mardel's counsel in this case. The original option to purchase the stock of Sara Perinne Carlin was acquired by a corporation known as R. J. Company, Inc., in November 1949, while litigation was pending. The final contract of sale was executed by Miss Carlin and R. J. Company, Inc., on July 2, 1951—only 15 days after a decree was passed in an action brought by Tulloch, Trustee, against Charles and Sara Perinne Carlin, and long prior to the final decision in Foster v. Carlin. When the contract was assigned by R. J. Company, Inc., to Mardel, it was acquired by the latter with full knowledge of legal expenses necessary to secure the stock ownership, and presumably these legal expenses are reflected in the negotiated price of acquiring the option contract from R. J. Company, Inc.

Mardel's present counsel argues that this court was not aware of the fee contractual agreement with Mardel's counsel. This is certainly a correct statement of fact, as it is not the practice of this court to inquire into fee arrangements between counsel and client, other than in cases involving infants and incompetents and, even then, the fee arrangement is in no sense binding on the court in making an award. This court naturally assumed that Messrs. Lewis and Simmonds were not working on a pure contingency basis and that there must have existed some retainer arrangement for compensation, irrespective of the final outcome of the litigation. However, what Mardel overlooks is the fact that the award of counsel fees was not to Mardel, either by way of reimbursement or windfall, but was to the attorneys for services rendered in the final analysis to the Alexandria Gazette Corporation by reason of it being a stockholder's derivative action. Schneidman refers to Carlin paying or being charged with these fees. As pointed out in the court's supplemental memorandum filed July 11, 1962 (prior to the final judgment and the appeal therefrom), the attorneys' fees allowed by the court were payable by the Alexandria Gazette Corporation, and no portion thereof was chargeable to Carlin, as the attorneys' fees constitute an incident

to the claim and are payable out of the fund recovered. Angoff v. Goldfine, 270 F.2d 185 (1 Cir., 1959); [7] Pergament v. Kaiser-Frazer Corp., 224 F.2d 80 (6 Cir., 1955). No assignment of error was noted by either party as tc this ruling.

■ We do not agree that the Messrs. Simmonds and Tolbert, and their respective law firms, are limited to the sum of $7,500.00 under the letter-contract of November 12, 1959; nor do we agree that the balance of $17,500.00 inures to the benefit of Mardel. We do agree that $7,500.00 was the maximum legal fee which could have been collected *from Mardel* for the trial in the district court, irrespective of the final judgment.

■■ In the alternative, Mardel suggests that the court should now rescind its final order of August 27, 1962, wherein an allowance of $25,000 was made to counsel. Thus, Mardel says, if it is incorrect in its argument that it is entitled to be reimbursed for *ante litem* attorneys' fees and expenses, and if it is in error in contending that Mardel is entitled to the entire $25,000 (as Mardel previously paid $7,500 to its counsel), then the award should inure to the benefit of Alexandria Gazette Corporation, and that such benefit would likewise inure to the benefit of the minority stockholder (Mardel) who owns a 48% stock interest. We disagree with this argument for several reasons. At the outset it should be noted that the court's memorandum of July 11, 1962, awarding counsel fees in the sum of $25,000, stated: "Either party may take issue with the allowance to the date of the entry of the judgment order." No party raised any issue with respect to same. Secondly, the judgment is final and has been paid by Carlin to Alexandria Gazette Corporation and, in turn, the corporation has paid the counsel fees so awarded. Moreover, it is well settled that the amount of counsel fees in such a case is not

dependent upon any retainer fee. By analogy see: Bakery and Confectionery Workers International Union v. Ratner, 118 U.S.App.D.C. 269, 335 F.2d 691 (1964). The value of the services rendered in the present case was fixed according to *quantum meruit*. Even with knowledge of the retainer fee, the court would not modify same.

Mardel has not attacked the total value of the counsel fees as awarded by the court, absent the allegedly binding limitation of $7,500.00 evidenced by the letter-contract of May 12, 1957. Nor does Mardel dispute the charge of $2,500.00 for services on appeal as this was the subject of an independent agreement following the judgment of the district court, at which time Mardel filed a cross-appeal contending that the district court erred in arriving at the method to be used in ascertaining damages.

■ We agree that the sum of $7,500, less the $2,500 due for services rendered on appeal, should be reimbursed to Mardel. To hold otherwise would tend to discourage the championship of integrity in corporate management and thereby diminish stockholder's derivative actions. The fact that Carlin, a majority stockholder, derives an indirect benefit by reason of the entire fund recovered is immaterial. United States v. Moulton & Powell, 188 F.2d 865 (9 Cir., 1951). No citation of authority is necessary to support the view that the allowance of counsel fees should relate to the total services rendered for the ultimate benefit of the corporation. The sum recoverable as attorneys' fees is not measured by what the plaintiff stockholder has expended, or contracted to expend, but is limited to the reasonable value of the services. Nor is the amount which may be allowed in any way dependent upon or limited by the value of the complaining stockholder's holdings in the corporation. 19 Am.Jur. (2d), Corporations, Section 590. The ex-

7. Angoff v. Goldfine, supra, refers specifically to *ante litem* services of counsel (who were the same counsel who prosecuted the stockholder's derivative action) and points out that these counsel were instrumental in realizing the approximate sum of $230,000 for the benefit of the corporation in a prior mandamus proceeding. This is not the situation in the instant proceeding.

penses allegedly incurred by Mardel, other than the *ante litem* expenses and counsel fees referred to herein, were the subject of a prior hearing.

An order will be entered approving the report of Messrs. Simmonds and Tolbert, and directing the latter to reimburse Mardel to the extent of $5,000.00. The reimbursement shall not actually be made until after the time for noting an appeal has expired and, if an appeal is noted by Mardel, the aforesaid sum of $5,000 shall be paid to the Clerk to be invested at interest or, in lieu thereof, an adequate bond shall be fixed to assure the payment of all costs on appeal. If Messrs. Simmonds and Tolbert elect to appeal, or cross-appeal, the aforesaid sum of $5,000 shall be deposited with the Clerk for investment as noted above, subject to the decision of the appellate court.