REILLY MORTGAGE GROUP, INC., et al., Plaintiffs,

v.

MOUNT VERNON SAVINGS AND LOAN ASSOCIATION, et al., Defendants.

Civ. A. No. 83–0305–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 2, 1983.

David G. Fiske, Alexandria, Va., for plaintiffs.

Terrence Ney, Fairfax, Va., for defendants Herndon, Reed, Robertson, Badalaty, Ochsman and Van Fossan.

Michael McGettigan, Alexandria, Va., for defendant Russell.

James W. Korman, Arlington, Va., for defendant Klein.

John A.C. Keith, Fairfax, Va., for defendant Shaner.

William D. Dolan, III, Arlington, Va., for defendant Eversoll.

John J. Brennan, Washington, D.C., for defendant Mount Vernon.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

### I. FACTUAL BACKGROUND

Mount Vernon Savings and Loan Association ("Mount Vernon") is a stock savings and loan association organized pursuant to the Virginia Savings and Loan Act, Va. Code § 6.1–195.1 *et seq.* Its activities are regulated by the Virginia State Corporation Commission, the Federal Home Loan Bank Board, and the Federal Savings and Loan Insurance Corporation. Mount Vernon's principal place of business is Arlington, Virginia.

Reilly Mortgage Group ("Reilly") is a District of Columbia Corporation with its principal place of business in the District of Columbia. Reilly owns approximately 24% of Mount Vernon's outstanding stock. James E. and Susan H. Veccia are residents of the District of Columbia, owning about 1% of Mount Vernon's outstanding stock.

Donald M. Eversoll, a New York resident, is Chairman of Mount Vernon's Board of Directors, and owns approximately 24% of Mount Vernon's outstanding stock. Peter Klein, also a New York resident, is Vice-Chairman of the Board of Directors, and owns approximately 24% of Mount Vernon's outstanding stock. Daniel H. Shaner, a Virginia resident, is Mount Vernon's Secretary and General Counsel. James F. Russell, II, a Virginia resident, was until December 1982 Mount Vernon's President and a member of the Board of Directors. All four of these individuals were at times relevant to this lawsuit members of the Executive Committee and the Loan Committee. The Court will refer to these four individuals collectively as the "Inside Directors."

The "Outside Directors" consist of J. Earl Herndon, a Virginia resident; Helen H. Reed, a Virginia resident; Rolfe Robertson, a Virginia resident; Peter Badalaty, a Virginia resident; Robert L. Van Fossan, a Virginia resident; and Lawrence A. Ochsman, a resident of the state of Maryland. Van Fossan, Badalaty and Ochsman are no longer members of Mount Vernon's Board. On December 7, 1982, R. Daniel Lindley, James P. Evans and John C. Simpson were named to the Board of Directors. Simpson was also chosen to serve as Mount Vernon's President. Lindsey, Evans and Simpson are referred to collectively as the "Non-Defendant Directors."

On March 25, 1983, Reilly and the Veccias brought this action against Mount Vernon and the ten individuals who served on Mount Vernon's Board during 1981 and 1982. Plaintiffs assert jurisdiction on the basis of diversity of citizenship. *See* 28 U.S.C. § 1332.

Count I of plaintiffs' complaint is in the form of a stockholder's derivative action, brought on behalf of Mount Vernon. Count I contains several substantive allegations of wrongdoing. Count I alleges that during 1981 and 1982, Mount Vernon, acting through the Inside Directors and with the acquiescence of the Outside Directors, entered into a series of loan transactions that violated state and federal statutes and regulations. The complaint further alleges that Inside Directors knew or should have known that such loans were both illegal and imprudent, and that the Outside Directors should have known that the Inside Directors loan activity was both illegal and imprudent. The plaintiffs allege that losses due to such improper loans have cost Mount Vernon in excess of $10,000,000.00.

The plaintiffs also allege that Mount Vernon, acting through its Board, acquired 99% of the outstanding stock of the Middle Peninsula-Northern Neck Federal Savings and Loan Association. Plaintiffs contend that the acquisition was made without stockholder authorization and in direct violation of the Virginia State Corporation Commission's contingent approval, and that the acquisition cost Mount Vernon approximately $.5 million per year.

The plaintiffs further allege that defendant Russell, while President of Mount Vernon, obtained from Mount Vernon's loan

portfolio certain negotiable residential mortgage notes, which he had endorsed and transferred to Partridge Associates, a Maryland limited partnership. Partridge Associates in turn gave Mortgage Investors of Washington ("MIW") a security interest in the notes, and designated Riggs National Bank of Washington as the custodian. MIW later sought to enforce its security interest. On February 24, 1983, the Superior Court of the District of Columbia declined Mount Vernon's request that Riggs be barred from transferring the notes to MIW. The plaintiffs claim that these transactions cost Mount Vernon in excess of $2,600,000.00.

In addition, the plaintiffs allege that the directors failed to establish sound lending practices; approved excessive salaries for themselves; and caused other undetermined losses. The plaintiffs contend that all of the actions alleged in Count I of the complaint were taken in violation of the directors' fiduciary duties, and seek for the corporation in excess of $30 million in compensatory and punitive damages.

Count II of the complaint represents the plaintiffs' individual action to recoup attorneys fees and other costs incurred in attempting to enforce their right to inspect Mount Vernon's books and to compel stockholders' meetings. Plaintiffs also seek a constructive dividend representing a pro rata share of the excessive salaries given Eversoll and Russell. Plaintiffs seek approximately $2 million in compensatory and punitive damages under Count II.

On May 27, 1983, Mount Vernon brought a cross-claim against defendant Russell. The cross-claim essentially duplicates the allegations in plaintiffs' complaint relating to Russell's misappropriation of negotiable instruments. Russell, in turn, brought a cross-claim against the other individual defendants, essentially seeking to pass through to them any liability on Mount Vernon's cross-claim.

Mount Vernon's cross-claim was brought on its behalf by a member of Hazel, Beckhorn & Hanes, a law partnership of which defendant Shaner is a member. However, on June 15, 1983, the Board appointed a special litigation committee to review "the appointment of counsel" in the "defense of the Reilly matter." Mount Vernon obtained new counsel to represent its interests. New counsel appeared on behalf of Mount Vernon at oral argument of the present motions before the court. In addition, counsel from Hazel, Beckhorn and Hanes has moved his withdrawal from the action, a motion the court grants.

The individual defendants present this court with several arguments for dismissal, among them the lack of sufficient diversity of citizenship between the parties to support jurisdiction and the failure of plaintiffs' complaint to satisfy the pleading requirements under Rule 23.1. In addition, defendants argue that Count II of plaintiffs' complaint should be dismissed for failure to state a claim upon which relief may be granted.

In support of their arguments on these motions, counsel have presented the court with a variety of documents and affidavits which fill out the details of the circumstances leading up to this tortured piece of litigation. Plaintiffs present a series of documents which show that beginning in October, 1981, the board of directors received repeated warnings from state and federal regulators that certain of Mount Vernon's activities constituted serious violations of federal and state regulations. These warnings advised the board of the risk of certain transactions, the directors' "responsibility for the possible grave results" (*See* letter from Sidney A. Bailey, Commissioner of Financial Institutions, State Corporation Commission, December 9, 1981), and of the regulators' determination that improper practices continued in violation of a permanent Federal Home Loan Bank Board Cease and Desist order (*See* Federal Home Loan Bank Board Report of Examination, November 26, 1982).

Plaintiffs also present affidavits that throughout this period no annual shareholders meetings were held. Plaintiffs' complaint further alleges that attempts to compel stockholders' meetings and force a

stockholder's examination of corporate books were unsuccessful. Finally, plaintiffs present affidavits which show that the stockholders did not participate in the appointment of the three new, Non-Defendant Directors.

Defendants' affidavits show that the three, Non-Defendant Directors did not own stock in Mount Vernon as of July 1, 1982. Defendants affidavits also show that defendant Shaner owns 50 shares of stock in the corporation.

Both parties present the court with affidavits purporting to fill out details relating to Mount Vernon's "special litigation committee." These affidavits show that this litigation committee was not created until June 15, 1983 (*See* Affidavit of John C. Simpson, ¶ 4, June 30, 1983); that the initial purpose was solely to obtain counsel to "represent the association in the defense of the Reilly action and to review with the board members such additional matters as may come before it" (*id.*); that the committee did "not have authority to determine for the board any matter in connection with [this case]" (*id.*); and that the composition of the board has changed frequently. *Compare* Affidavit of John C. Simpson, ¶ 2, June 30, 1982, *with* Affidavit of John C. Simpson, July 14, 1983; that July 13, 1983 (after this court had heard argument on these motions, and after it had indicated its desire to hear additional argument) the board was given full authority to investigate and litigate matters contained in this and other suits involving the association (*See* Affidavit of John C. Simpson, July 14, 1983).

In late May, the parties brought the motions which are currently before the court, styled as "Motions to Dismiss." They later sought to withdraw those motions. The Late Senior District Judge Oren R. Lewis, Sr. permitted the motions to be withdrawn, but directed that if the motions were re-brought, they should be styled as "Motions for Summary Judgment." However, the court believes these motions are more properly brought under Rule 12; accordingly, the motions presently before the court are treated as motions to dismiss under that Rule.

In examining the present motions, the court limits itself to events alleged to have occurred before July 1, 1983. On that date, the court heard argument on these motions and ruled from the bench. The court agreed to hear re-argument on July 15, 1983, but not on the grounds that the parties had changed their positions. Any events subsequent to that date are irrelevant to the issue whether the court's July 1st ruling was correct.

The court is ordinarily quite loathe to reconsider prior rulings. Rehashing closed matters creates uncertainty and threatens finality. But the court never hesitates to reconsider a prior ruling if further consideration may prevent an injustice from occurring. Because this case is peculiarly troubling, and because the relevant law is peculiarly opaque, the court agreed to reconsider its rulings. The court, for reasons given below, withdraws its prior ruling and substitutes the rulings stated below.

## II. LEGAL ANALYSIS

### A. *Subject-Matter Jurisdiction*

 Plaintiffs assert that this court's jurisdiction over this case is proper under 28 U.S.C. § 1332, based upon diversity of citizenship among the parties. One of the first principles of diversity jurisdiction, the complete diversity requirement, posits that there can be no diversity jurisdiction when any opposing parties are citizens of the same state. *See Strawbridge v. Curtis,* 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806). But diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who are defendants. *Indianapolis v. Chase National Bank,* 314 U.S. 63, 69, 62 S.Ct. 15, 16–17, 86 L.Ed. 47 (1941). Rather, the court may ascertain whether the alignment of the parties as plaintiff and defendant conforms with their true interest in the litigation. *Id.* Once indispensible parties are aligned according to their true interests, the court may then examine whether diver-

sity jurisdiction may still be maintained. *See, e.g., City of Dawson v. Columbia Ave. Savings Fund,* 197 U.S. 178, 25 S.Ct. 420, 49 L.Ed. 713 (1905); *Indianapolis v. Chase National Bank, supra. See generally* 13 Wright, Miller & Cooper, *Federal Practice and Procedure,* § 3607 (1975 & Supp.1983).

■ In a stockholder's derivative suit, such as the one presently before the court, the claim pressed by the stockholder is "not his own, but the corporation's", and the plaintiff stockholder is "at best a nominal plaintiff." *Koster v. Lumberman's Mutual Casualty,* 330 U.S. 518, 523, 67 S.Ct. 828, 831, 91 L.Ed. 1067 (1947); *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed. 729 (1970). As a practical matter, the corporation is initially named as a defendant. In this way, the stockholder assures the presence of an indispensible party. *See, e.g., Liddy v. Urbanek,* 707 F.2d 1222, 1224 (11th Cir.1983).[1] However, once joined and properly before the court, the corporation is then realigned, if necessary, according to its real interests. *Smith v. Sperling,* 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957); *Liddy v. Urbanek, supra; Lewis v. Odell,* 503 F.2d 445 (2d Cir.1974).

■ If stockholders' derivative suits were evaluated according to usual principles, the corporation would be aligned as a plaintiff as a matter of course, since the corporation stands to benefit from a successful suit. *See Schmidt v. Esquire,* 210 F.2d 908 (7th Cir.), *cert. denied* 348 U.S. 819, 75 S.Ct. 31, 99 L.Ed. 66 (1954). However, such actions receive a "special dispensation", by which the corporation is aligned as a defendant if the corporation is "under a control antagonistic" to the stockholder plaintiffs' rights. *Doctor v. Harrington,* 196 U.S. 579, 25 S.Ct. 355, 49 L.Ed. 606 (1905); *Koster v. Lumberman's Mutual Casualty Company, supra.* The antagonistic corporation will be realigned as a defendant, even if diversity of citizenship among the parties is thereby defeated. *See, e.g., Liddy v. Urbanek, supra; Lewis v. Odell, supra.*

■ The determination whether a corporation is sufficiently antagonistic to be aligned as a defendant should be "a practical, not a mechanical determination, and is resolved by the pleadings and the nature of the dispute." *Smith v. Sperling, supra,* 354 U.S. at 97, 77 S.Ct. at 1116. Antagonism is to be found "[w]herever the management refuses to take action to undo a business transaction or whenever . . . it so solidly approves it than any demand would be futile . . ." *Id.*

■ If this court were to look solely to plaintiffs' complaint, it would have little trouble aligning Mount Vernon as a defendant. The complaint alleges that the corporation's controllers failed to remedy improper activities, failed to permit stockholders' efforts to compel remedies, and uniformly approved activities to both the corporation's and the stockholders' detriment.

The defendants insist that this court must consider the corporation's cross-claim against defendant Russell, as supporting their assertion that the corporation is not antagonistic to the plaintiffs' claim. Defendants' argument has a certain superficial seductiveness. On its face, the cross-claim would seem to refute the suggestion that "the management refuses to take action to undo a business transaction . . ." *Smith v. Sperling,* 354 U.S. at 96, 77 S.Ct. at 1116–17. Defendant Russell, at least, faces the prospect of defending against two independent parties attempting to recover from him on behalf of the corporation, and on nearly identical legal theories. The cross-claim suggests that Mount Vernon is willing and able to pursue a claim on its own behalf, and that it must be aligned as a plaintiff. If the corporation were realigned, complete diversity would be defeated, and the court would be without jurisdiction over this case.

---

1. A corporation is an indispensible party in a derivative action brought by one of its shareholders. *City of Davenport v. Dows,* 18 Wall. (85 U.S.) 626, 21 L.Ed. 938 (1874); *Meyer v.* *Fleming,* 327 U.S. 161, 66 S.Ct. 382, 90 L.Ed. 595 (1946); *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *Liddy v. Urbanek,* 707 F.2d 1222, 1224 (11th Cir.1983).

However, further reflection suggests several flaws with this analysis. In the first place, the cross-claim itself is of a suspect nature. It was brought on Mount Vernon's behalf, against defendant Russell, by defendant Shaner's law firm. A cynical eye could regard the cross-claim as so much finger-pointing between warring defense camps.

■ But even beyond the cross-claim's suspect nature, its timing is also questionable. The corporation's original response to plaintiffs' complaint was a motion to dismiss. Only later did the corporation change its strategy and bring the cross-claim. If the court were to permit Mount Vernon's change in strategy to defeat jurisdiction, the court would hazard offense to the venerable principle that jurisdiction is established at the commencement of the action, and, once established, cannot be ousted by later events. *See, e.g., Mullan v. Torrance,* 9 Wheat (22 U.S.) 957, 6 L.Ed. 154 (1824). *See generally,* 3A Moore's *Federal Practice,* (2d ed. 1980), ¶ 19.03[1] at 52.

The *Smith* opinion directs this court to look to the "face of the pleadings", adding that the "bill and the answer normally determine whether the management is antagonistic to the shareholder." 354 U.S. at 96, 77 S.Ct. at 1115. There is an unstated inference that in appropriate cases, courts examining the issue of antagonism may look to pleadings beyond the complaint and the answer; however, because events subsequent to the commencement of the suit cannot deprive the court of its jurisdiction, "the facts which form the basis for realignment must have been in existence at the time of the action was commenced." *American Motorists Insurance Company v. Trane Company,* 657 F.2d 146, 149 (7th Cir.1981). For the court "[t]o focus solely on a position taken well after the commencement of the proceedings distort[s] the true nature of the litigation." *Id.,* at 151.

■ Mount Vernon filed its cross-claim about two months after plaintiffs' filed their complaint, and after having first filed a motion to dismiss. At best, the cross-claim suggests that Mount Vernon may

have altered its antagonistic opposition to plaintiffs' claims against defendant Russell. But that late change in Mount Vernon's strategic position has no effect on the facts in existence at the commencement of this suit. Those facts, which show that the Board refused to heed the warnings of state and federal regulators, its resistance to stockholders' remedial attempts, and Mount Vernon's initial hostility to the suit, establish a "real collision between the stockholder and his corporation." *Smith v. Sperling, supra,* 354 U.S. at 97–98, 77 S.Ct. at 1115–1116.

Even were the court to give weight to the mere presence of Mount Vernon's cross-claim, that alone would not suffice to compel Mount Vernon's realignment as a plaintiff. The cross-claim addresses only one part of plaintiffs' numerous allegations, and suggest nothing that would otherwise contradict continuing antagonism as to all other matters in dispute. But "it is the points of substantial antagonism, not agreement, on which the realignment question must turn." *American Motorists Insurance Company v. Trane Company, supra,* at 151. Even taking all the pleadings purely on their face, the court finds substantial antagonism.

■ On reargument of these motions, new counsel for Mount Vernon presented the court with yet another position on Mount Vernon's behalf. Counsel argued that the court should find Mount Vernon antagonistic to the plaintiffs despite the cross-claim. In other words, Mount Vernon argued the identical position as the plaintiff while simultaneously maintaining that it was antagonistic with the plaintiff. This awkward and self-contradictory position occupied by both Mount Vernon and the plaintiffs is not surprising in a record characterized by hidden machinations, secret cabals, and unholy alliances. The court fully realizes new counsel's precarious position, taking up Mount Vernon's case after so much has already transpired. But Mount Vernon's transient litigation posture merely underscores the wisdom of limiting the present inquiry to facts in existence at the

commencement of the suit. If litigants could oust jurisdiction through mere changes in strategy, not only would the court's jurisdiction be merely contingent, but litigants could be tempted to pose or dissemble in order to hoodwink the court into surrendering jurisdiction.

The defendants also argue that the corporation should be aligned as a plaintiff because plaintiffs never demanded that the corporation take up the litigation, and that until Mount Vernon has had a chance to decide whether to take up the litigation, any assertions of antagonism to plaintiffs' position are premature. Defendants cite cases in which courts realigned corporations as plaintiffs *in part* because the stockholder plaintiff had not made such a demand upon the corporation. *See, e.g., Lewis v. Odell,* 503 F.2d 445, 447 (2nd Cir.1974); *Taylor v. Swirnow,* 80 F.R.D. 79, 83 (D.Md.1978); *Tessari v. Herald,* 207 F.Supp. 432, 435–37 (N.D.Ind.1962).

█ The mere failure to have made demand, standing alone, is not sufficient to support realignment of Mount Vernon as a plaintiff. In light of numerous "points of substantial antagonism" between plaintiff and the corporation (at least as to facts existing at the outset of this litigation), for this court to realign because of the mere absence of demand would defeat *Smith v. Sperling's* admonishment that the determination of the corporation's proper alignment should be a "practical", not a "mechanical" process. 354 U.S. at 97, 77 S.Ct. at 1116. Furthermore, for reasons elaborated below, the court finds that the usual requirements of stockholder demand prior to commencement of a stockholder's derivative suit are excused in this case. *See Rogers v. Valentine,* 426 F.2d 1361 (2nd Cir. 1970) and *Visual Sciences v. Matushita Electric Industries Co.,* 528 F.Supp. 1000 (E.D.N.Y.1981) (futility of demand one factor in finding antagonism).

In summary, the court finds that, based upon facts in existence at the commencement of this suit, the corporation is antagonistic to the plaintiffs. Therefore, the corporation must be aligned as a defendant,

and defendants' motion to dismiss for want of complete diversity must be denied.

## B. *The Demand Requirement*

█ The second ground upon which defendants move for dismissal is their contention that plaintiffs have failed to satisfy the pleading requirements of Rule 23.1 of the Federal Rules of Civil Procedure. That rule requires, in pertinent part, that in a derivative action "[t]he complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority ... and the reasons his failure to obtain the action or for not making the effort." The requirement that stockholders first address their grievance to corporate authority serves numerous practical purposes, such as forcing shareholders to exhaust their intercorporate remedies; permitting the corporation to pursue alternative remedies; permitting the termination of meritless actions designed to vex or harass the corporation; permitting the corporation, with superior knowledge and financial resources, to assume control of the suit; and avoiding unnecessary judicial involvement in the internal affairs of the organization. *See generally Lewis v. Graves,* 701 F.2d 245, 247–248 (2d Cir.1983); 7A Wright & Miller, *Federal Practice & Procedure,* § 1831 at 382 (1972 and Supp.1983); Note, *The Demand and Standing Requirements in Stockholder Derivative Action,* 44 U.Chi.L. Rev. 168, 171–172 (1976).

█ Rule 23.1's demand requirement applies to stockholder's derivative actions brought in federal courts where jurisdiction is based on diversity of citizenship. *See Meltzer v. Atlantic Research Corp.,* 330 F.2d 946, 947 (4th Cir.), *cert. denied* 379 U.S. 841, 85 S.Ct. 78, 13 L.Ed.2d 47 (1964). In determining whether Rule 23.1's demand requirement has been satisfied, federal courts must look to state law. *Burks v. Lasker,* 441 U.S. 471, 480, 99 S.Ct. 1831, 1838, 60 L.Ed.2d 404 (1979); *Lewis v. Curtis,* 671 F.2d 779, 785 (3rd Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982); *Brody v. Chemical Bank,* 482 F.2d 1111, 1114 (2d Cir.), *cert. denied* 414 U.S. 1104, 94 S.Ct.

737, 38 L.Ed.2d 559 (1973); *Clark Enterprises v. Holywell Corp.*, 559 F.Supp. 1307, 1311 n. 3 (E.D.Va.1983).

■ Mount Vernon is organized under the laws of the Commonwealth of Virginia. Under Virginia's laws, demand must be made upon the directors before a stockholder's derivative suit may be maintained. *See, e.g., Mount v. Radford Trust Co.*, 93 Va. 427, 25 S.E. 244 (1896); *Va. Pass. & P. Co. v. Fisher*, 104 Va. 121, 51 S.E. 198 (1905); *Koch v. Realty Corp.*, 205 Va. 65, 135 S.E.2d 131 (1964). But plaintiffs have not made such a demand upon the directors; instead, plaintiffs allege that any demand would have been futile, and that, therefore, demand should be excused.

■ Under Virginia law, demand is excused only "upon allegation and proof of such facts as show that it is reasonably certain that a demand for corporate action would have been useless." *Liggett v. Roanoke Water Co.*, 126 Va. 22, 101 S.E. 55 (1919). *See also Va. Pass. & P. Co. v. Fisher, supra* (demand not excused because "no ground for presuming that [the directors] would not perform their duty."); *Meltzer v. Atlantic Research Corp., supra* (purporting to apply federal law, but citing Virginia law in finding that demand upon directors of Virginia corporation would be "futile").

■ The core of plaintiffs' contention that demand should be excused is the allegation that the board members are either so self-interested or otherwise tainted, and their exposure to liability so great, that no demand upon the board could be expected to prod them to correct the alleged wrongs.

Virginia's courts have never really specified the details which would persuade them that the demand requirement should be excused in a particular case; however, the court is not unduly hampered by the absence of Virginia case authority. Some of the other Federal Circuit Courts of Appeals, have evolved a "hard-boiled" approach to Rule 23.1's requirements. Block, Prussin & Wachtel, *Dismissal of Derivative Actions Under the Business Judgment Rule*, 38 Bus.

Lawyer 401, 411 (1983) [hereinafter "Block"]. The court finds that even under this hard-boiled approach, demand would be excused; that is, even if Virginia's courts adopted the stiffest demand requirements applied in any jurisdiction, demand would be excused in this case.

The hard-boiled rule is also the majority rule, though it is applied with varying degrees of vigor in the different circuits. The rule holds that absent specific allegations of self-dealing or bias on the part of a majority of the board, mere director approval and acquiescence in the alleged misdeeds are insufficient to render demand futile. *See Lewis v. Graves, supra; Lewis v. Curtis, supra* at 785; *Grossman v. Johnson*, 674 F.2d 115, 124 (1st Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 85, 74 L.Ed.2d 80 (1982); *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1210 (9th Cir.1980); *In re Kauffman Mutual Fund Actions*, 479 F.2d 257, 265 (1st Cir.), *cert. denied* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). *Compare Liboff v. Wolfson*, 437 F.2d 121, 122 (5th Cir.1971) (per curiam).

Six of the members of the present board (Eversoll, Klein, Shaner, Reed, Robertson and Herndon) are named as defendants in the present action. But under the majority rule, merely naming directors as defendants is not sufficient to excuse demand. *See Lewis v. Graves, supra*, at 249; *Lewis v. Curtis, supra*, at 785; *Heit v. Baird*, 567 F.2d 1157, 1162 (1st Cir.1977). In addition, these six persons are alleged to have acquiesced in the improper loans, and the ill-advised merger. As was noted above mere acquiescence is ordinarily insufficient. But the allegations in this complaint are somewhat extraordinary. These directors are alleged to have approved a course of conduct, allegedly without dissent, which violated state and federal regulations (*See* Complaint, ¶ 31); that they continued to approve these practices despite repeated warnings from state and federal regulators of danger to the corporation and of the directors' own potential liability for losses (*See* Complaint, ¶ 33); and they continued

to approve a course of conduct that drove a highly profitable operation into insolvency.

While these allegations alone should raise serious doubts about the ability of a majority board to give disinterested attention to a shareholder demand for remedies against the wrongdoers (i.e., themselves), other allegations confirm those doubts. These directors are alleged to have historically resisted shareholder initiatives, and, indeed, are alleged to have failed to hold annual shareholder meetings which could have served as some check on the alleged improprieties. There is little reason to suspect that the shareholder demand would receive any different treatment than previous shareholder initiatives. *See Pioche Mines Consolidated, Inc. v. Dolman,* 333 F.2d 257, 277 (9th Cir.) *cert. denied,* 380 U.S. 956, 85 S.Ct. 1082, 13 L.Ed.2d 972 (1965) (failure to hold stockholders' meetings or to permit inspection of corporate books significant in finding demand excused); *Clark Enterprises, Inc. v. Holywell Corp., supra,* at 1310 (same).

Finally, the six directors are alleged to have voted excessive salaries to defendants Russell and Eversoll, and to have voted themselves excess directors' fees. *See* Complaint ¶¶ 47–48. In other words, at least six of the nine members of the present board are alleged to have a direct pecuniary interest in this lawsuit.

The question whether the six directors' alleged self-interest on a narrow part of plaintiffs' complaint is alone sufficient to

excuse demand could be a close one. But on careful consideration, and re-consideration, the court concludes that the cumulative weight of plaintiffs' allegations of these six directors' nonfeasance, combined with the incremental weight of their alleged self-interested malfeasance, establish that a majority of the board would not be objective about a shareholder demand that they bring the present suit against themselves. Therefore, the court finds that plaintiffs have carried their burden of demonstrating why directors could not be depended upon to do their duty. *In re Kauffman Mutual Fund Actions,* 479 F.2d 257, 263 (1st Cir.), *cert. denied* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973).[2]

Because the court holds that plaintiffs have met their burden under the strictest standard, the court necessarily must find that plaintiffs have satisfied less stringent tests. For example, in *Meltzer v. Atlantic Research Corp.* 330 F.2d 946 (4th Cir.), *cert. denied,* 379 U.S. 841, 85 S.Ct. 78, 13 L.Ed.2d 47 (1964), the United States Court of Appeals for the Fourth Circuit held that allegations of self-dealing by two out of five directors plus acquiescence by the remaining three is sufficient to excuse demand. Significantly, that case purported to apply federal law, but specifically found that such allegations would also satisfy Virginia law. If Virginia law would excuse demand when less than a majority are alleged to have engaged in self-interested wrongdoing,

---

**2.** Both parties attempt to draw comfort from this court's prior decision in *Clark Enterprises, Inc. v. Holywell Corp.,* 559 F.Supp. 1307 (E.D. Va.1983). In particular, defendants would have the court "look behind the pleadings" at the existence of the purported special litigation committee. But *Clark Enterprises* was a classic demand-excused case, in that the verified complaint effectively alleged that the board of directors was under the total domination of a self-interested wrongdoer. The court's examination of the special litigation committee in that case was merely corroborative. However, the futility of demand was clearly established by the allegations contained in the complaint.

The court's holding in this case is based solely on plaintiffs' complaint. The court recognizes that it could, in the exercise of its sound discretion, consider other material. *See, e.g.,*

*Brooks v. American Export,* 68 F.R.D. 506, 509–510 (S.D.N.Y.1975). See also *Pioche Consolid., Inc. v. Dolman,* 333 F.2d 257, 265 (9th Cir.), *cert. denied,* 380 U.S. 956, 85 S.Ct. 1082, 13 L.Ed.2d 972 (1964); Note, *The Demand and Standing Requirements in Stockholder's Derivative Actions,* 44 U.Chi.L.Rev. 168, 181 (1976). However, the court declines to so exercise its discretion. The court believes that the better rule is to limit the present inquiry solely to the complaint itself. *See, e.g., Lewis v. Graves,* 701 F.2d 245, 248 (2d Cir.1983). As a mere pleading defense, a motion to dismiss under Rule 23.1 should not be transformed into an early trial on the merits. Cf. *Smith v. Sperling,* 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957). Therefore, the inquiry should be drawn as narrowly as possible.

clearly it would excuse demand where more than a majority are self-interested. The court concludes that a Virginia court would excuse the demand requirements on the allegations contained in plaintiffs' complaint.

The court could have delved further into the various considerations raised in the parties' pleadings, such as the wrongdoer control of the corporation; the non-defendant directors' lack of qualifications for their office; and the numerous other indicia of futility which characterizes the record before the court. The non-defendant directors, since they did not own stock at the time of their appointment, do *not* appear to meet the requirement of Va.Code § 6.1–195.41; it *does* appear that the inside directors own or control a majority of the stock; and the existence of the special litigation committee has been so protean, changing form, content and purpose on regular intervals, as to underscore its captivity to the very persons it would have to consider suing were stockholder demand required. But the court, while noting that any further examination would merely corroborate its ruling, does not need to go so far. In the final analysis, such additional considerations are unnecessary in order for this court to reach a final decision.

The narrowness of the court's ultimate decision is deceptive; the parties have strewn quite a few red herrings in the court's path. The parties' efforts to divert the court's attention to a variety of extraneous considerations was almost successful. The parties' various contentions about the board members' qualifications, and the existence of a "special litigation committee" were quite distracting from the real business before the court. And the real business is to examine plaintiffs' complaint and determine whether it alleges with sufficient particularity Rule 23.1's pleading requirements. The court concludes that it does.

The court takes solace from the knowledge that others have observed that "the question of when demand is required is particularly hard to answer..." Block, *supra*, at 410, and that, because of the difficulty of such analyses, "the decision as to

whether a plaintiff's allegations of futility are sufficient to excuse demand depends on the particular facts of each case and lies within the discretion of the district court." *See Lewis v. Graves,* 701 F.2d 245, 248 (2nd Cir.1983).

Because the court finds that Rule 23.1's demand requirements are excused, the defendants' motion to dismiss under Rule 12(c) is denied.

### C. *Plaintiffs' Individual Claims*

Defendants also argue that Count II of plaintiffs' complaint should be dismissed for failure to state a claim upon which relief could be granted. In Count II, plaintiff seeks recovery of attorneys' fees expended in efforts to compel stockholders' meeting and inspection of Mount Vernon's books, and also a constructive dividend for excessive salaries.

Defendants argue that none of these remedies plaintiffs' seek are available under Virginia law, at least as asserted by plaintiffs. While Virginia law authorizes actions to compel stockholders' inspection of corporate books, see Va.Code § 13.1–47, it does not authorize payment of attorneys' fees for successful actions to compel. And while Va.Code § 13.1–25 provides for the convening of annual stockholders' meetings, that section makes no provision for attorneys fees if such meetings are not held.

In opposition to the defendants' motion to dismiss, plaintiff refers this court to cases which support the proposition that plaintiff would be entitled to attorneys' fees if Count II were brought derivatively, on behalf of the corporation. *See, e.g., Wometco Enterprises, Inc.,* 528 F.2d 1128 (4th Cir.1976); *Mardel Securities, Inc. v. Alexandria Gazette Corp.,* 278 F.Supp. 1010 (E.D.Va.1967). However, plaintiff has presented this court with no cases, nor has the court's research revealed any, which show that under Virginia law plaintiffs are entitled to sue for such fees brought in an action on their own behalf. Instead, plaintiffs argue that such fees are within this court's historic equity jurisdiction. The court declines to exercise its powers in such a broad, sweeping way.

Under Virginia law, if a plaintiff is unable to show any basis for the maintenance of a count in his complaint, that count must be dismissed. *See, e.g., Keepe v. Shell Oil Co.*, 220 Va. 587, 591, 260 S.E.2d 722, 725 (1979). If the Virginia General Assembly had wanted to permit stockholders' moving to compel stockholders' meeting or inspection of corporate books to be able to recover attorneys' fees, it would have expressly authorized them, as it has in numerous other instances. *See, e.g.,* Va.Code § 9–6.14:21 A; §§ 18.2–499 and 18.2–500; § 36–94(b); § 55–382. In the absence of such authorization, this court will not in effect create a cause of action that no court of Virginia would recognize.

Nor do plaintiffs persuade the court that they are entitled to pursue a cause of action for a constructive dividend on their own behalf. While plaintiffs might pursue such a cause on Mount Vernon's behalf under Va.Code § 13.1–44(a), they have no such right in themselves. Again, this court will not create a cause of action that Virginia's courts would not recognize.

Because plaintiffs have failed to demonstrate any basis for Count II of the complaint, defendants' motion to dismiss that count must be granted. *See* Fed.R.Civ.P. 12(b)(6). Accordingly, Count II of plaintiffs' complaint is dismissed.